## PARK PLAZA STATE BANK OF ST. LOUIS PARK v. CWS DEVELOPMENT COMPANY.
## CWS DEVELOPMENT COMPANY v. PARK PLAZA STATE BANK AND OTHERS.

227 N. W. 2d 560.

March 14, 1975—No. 44740.

*Rice, Evans & Christensen* and *Robert Rice,* for appellant.

*Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman,* *Jerome S. Rice,* and *Frederick E. Finch,* for respondent bank.

Heard before Otis, MacLaughlin, and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

This is an appeal from a judgment involving two actions that were consolidated for trial in the district court to determine who is entitled to certain contract proceeds from a building contract.

While the facts as related in the briefs are somewhat complicated, they can be simplified by simply referring to the contracts involved and the parties seeking to recover the proceeds hereinafter mentioned.

Modular Structures, Inc., (hereinafter Modular) is a Minnesota corporation and was engaged in the business of building prefabricated modular housing units in its factory at Pipestone, Minnesota.

CWS Development Company (hereinafter CWS) is a South Dakota corporation and was engaged in the business of developing and constructing housing projects.

On November 4, 1969, CWS entered into a "turnkey contract" [1] with the Pipestone Housing and Urban Development Authority under which CWS was obligated to purchase land, develop and construct a low-cost housing project, and turn the project over to the Authority when the units were ready for occupancy. The

---

* Retired Chief Justice acting pursuant to Minn. St. 2.724.

[1] "Turnkey contract" is construction-trade language for a construction contract which requires the contractor to bear the full responsibility for and the full cost of development until the project is complete. Typically, the contractor must obtain interim financing, acquire the land, have plans drawn up, manage the construction, and pay subcontractors and materialmen. When the project is completed to the satisfaction of the ultimate owner, the contractor "turns over the key" and receives full payment for the development costs accrued. The contract between Pipestone Housing and Urban Development Authority and CWS was of this type.

contract called for transfer of title to the Authority on August 31, 1970, at which time CWS was to receive the full contract price. On February 6, 1970, CWS entered into a subcontract with Modular under which Modular was to construct 11 buildings which would constitute 20 dwelling units according to preexisting specifications and to transport the units to the project site and set them on appropriate foundations. The delivery date provided in the contract was June 15, 1970. The original subcontract price was $173,675. This was later adjusted by agreement of the parties to $172,692.35.

The subcontract provided that Modular was to pay for the labor and material necessary to construct the units and to hold CWS harmless from all mechanics liens of materialmen and subcontractors and further provided that CWS could at its discretion withhold funds sufficient to satisfy any claims of materialmen or subcontractors of which it had notice. It further provided that in the event of default by Modular, CWS could complete the contract.

The contract provided that CWS was to pay 90 percent of the contract price per unit upon delivery of each unit. The parties orally modified this provision due to the fact that Modular was unable to obtain a surety bond as required by the subcontract so that payment would be made in a lump sum upon delivery of the final unit.

Modular began to experience financial difficulties after the subcontract was executed. It sought and obtained loans from Park Plaza State Bank (hereinafter Park Plaza) of $50,000, for which it executed two promissory notes and entered into a security agreement assigning to Park Plaza all of its rights under the CWS contract. A financing statement was filed June 16, 1970, with the Secretary of State. To alleviate Modular's cash shortage, CWS made interim payments to Modular in the sum of $132,415.21 during the course of construction. Delays occurred in the performance of the contract, and on June 15, 1970, the date upon which Modular was to complete performance, only 2 of the

11 buildings had been delivered to the site. The final unit was not delivered until February 1971.

When the units were delivered, all were incomplete and Modular attempted to complete the necessary finishing work at the site but was unable to do so. On April 27, 1971, CWS notified Modular that, pursuant to the terms of the subcontract, it would take over the completion of the construction of the units on May 3, 1971.

In order to complete the units, CWS did take over the work, employing the Christensen Corporation to perform the labor. It purchased the necessary material directly. The project was completed on October 18, 1971.

On April 26, 1971, Modular filed three mechanics liens against the property, totaling $40,173 for labor and material utilized in constructing the units. These mechanics liens were assigned to Park Plaza on April 26, 1971, and the assignment was recorded in the office of the register of deeds on May 4, 1971.

Modular was adjudged bankrupt in 1973.

Two actions were commenced and consolidated for trial in the district court. The first action was commenced by Park Plaza as assignee of the bankrupt Modular to enjoin CWS from paying to certain third parties sums alleged to be due and owing under the subcontract mentioned above. The judge of the district court issued a temporary restraining order in this action on June 14, 1971. The second action is an action to quiet title brought by CWS to eliminate various mechanics liens filed against the property by Modular and other subcontractors and materialmen who had furnished labor and material pursuant to the subcontract entered into by CWS and Modular. CWS discharged all liens by depositing $52,065.18 with the clerk of district court pursuant to Minn. St. 514.10, Park Plaza answered the action to quiet title praying for foreclosure of its mechanics liens as an assignee of Modular and praying for judgment in the sum of $41,259.

Jordan Millwork Company (hereinafter Jordan Millwork) also answered, seeking foreclosure of a lien for material supplied by

it and seeking judgment in the sum of $1,380.18 including attorneys fees, interest, and costs.

Judgment in the consolidated actions was entered on August 15, 1973, in favor of Park Plaza in the sum of $9,737.50 with interest and attorneys fees and in favor of Jordan Millwork in the sum of $1,380.18 with interest and $200 attorneys fees.

The court further ordered that after payment of the liens established as set forth in its findings the balance of the deposits should be returned to CWS. See, Minn. St. 514.10.

In addition to the judgment entered in favor of Park Plaza, the trial court found that CWS was entitled to an offset against the money deposited in the district court in the sum of $30,889.64 for the completion of the contract. The sufficiency of the evidence to sustain the court's finding in that amount furnishes the main basis for this appeal, it being the contention of CWS that it is entitled to offset $41,107.11 [2] after the Jordan Millwork claim is eliminated.

Unfortunately, the trial court, while indicating an intention to do so, did not file any memorandum. Such a memorandum would have been of great assistance to us on review in determining how the court arrived at the figure it allowed CWS as an offset. However, we have carefully examined the record and are convinced that there is nothing involved in this appeal but a question of whether the evidence sustains the court's findings. Without going into an elaborate discussion of the proof to sustain the court's findings, we are convinced that the evidence amply supports the court's findings with respect to the offset allowed to

---

[2] The conclusion in appellant's brief reads: "The judgment appealed from should be reversed; plaintiff CWS should be allowed to offset its total cost in completing the project of $41,107.11 plus the Jordan Millwork lien of $1,580.18 or a total of $42,687.29 from the amount of $40,277.14 due defendant [Park Plaza] Bank as the assignee of Modular; that no amount be awarded to defendant Bank; and that plaintiff CWS have judgment against defendant Bank for plaintiff's statutory costs and disbursements in this action."

CWS, as well as the other findings of fact. Consequently, the case must be, and is, affirmed.

We might add that appellant claims that the trial court erred in not setting off the judgment entered in favor of Jordan Millwork against the amount due Modular under the subcontract. In answer to this contention, we might simply point out that the issue was raised for the first time on appeal and cannot be considered for the first time here. No motion was made for amended findings, so the trial court has never had an opportunity to consider this contention. The appeal is from the judgment.

Affirmed.