## BARNES TRUCKING SERVICE, INC. v. HASSLEN CONSTRUCTION COMPANY AND OTHERS.

227 N. W. 2d 563.

March 14, 1975—No. 44744.

*Rice, Evans & Christensen* and *Robert Rice,* for appellant.

*Robert R. Pflueger,* for respondent Hasslen.

*Fredrikson, Byron, Colborn, Bisbee, Hansen & Perlman, Jerome S. Rice,* and *Frederick E. Finch,* for respondent bank.

Heard before Otis, MacLaughlin, and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

This is an appeal from a judgment dismissing the cause of action of plaintiff, Barnes Trucking Service, Inc. (hereinafter Barnes).

This action, like the two actions consolidated and presented under the title of Park Plaza State Bank v. CWS Development Co. 303 Minn. 306, 227 N. W. 2d 560 (1975), is an outgrowth of an unperformed subcontract of a bankrupt, Modular Structures, Inc. (hereinafter Modular), and the parties have stipulated that the trial court record of those actions be incorporated by reference into the record of this action. The parties also stipulated that the first three paragraphs of the memorandum accompanying Judge Rolloff's order denying Barnes' motion for summary judgment in this action, excluding the last sentence of the second paragraph of the memorandum, are an accurate summary of many of the facts relevant to this action.[1]

---

* Retired Chief Justice acting pursuant to Minn. St. 2.724.

[1] The trial court memorandum states: "This is an action to recover a money judgment in the sum of $4,101.50 for trucking services performed by plaintiff for Modular Structures, Inc. On March 3, 1970 Hasslen Construction Company had a contract with Ortonville H.U.D. to build 20 low rental housing units consisting of 11 buildings. Hasslen contracted with Modular for the completion and delivery at the building site of the 11 buildings and placing them on foundations. Modular made application to the defendant [Park Plaza State Bank of St. Louis

The facts may be briefly stated as follows: Hasslen Construction Company (hereinafter Hasslen) entered into a contract with the Ortonville Housing and Urban Development Authority for

---

Park] for a loan of $50,000.00. The loan papers were signed on June 12, 1970, and included a financing statement, security agreement and a note for $20,000.00. Modular borrowed an additional $30,000.00 on June 26, 1970 on the basis of the same security agreement. The security agreement granted a lien on all of Modular's property of every kind and description in which the borrower had or might acquire in the future, including an assignment of contract rights and all inventory. Hasslen was duly notified of this assignment. The housing units were built at Pipestone and Modular hired plaintiff to transport the units to Ortonville. Plaintiff has not been paid.

"Modular had difficulty in performing the contract and failed to pay many of the creditors. On December 24, 1970 Modular filed a mechanic's lien statement for the sum of $20,500.00, and on the same day the mechanic's lien was assigned by Modular to the bank. Six other creditors filed mechanic's liens, but the plaintiff did not file a mechanic's lien statement. Modular's finances were deteriorating, and it filed an application under M.S. 301.55 with the District Court of Pipestone County on January 25, 1971. The compromise proposed was approved by the requisite number of creditors, and a judgment approving the same was entered on March 11, 1971. Plaintiff filed its claim in those proceedings but reserved its right to proceed directly against the defendant Hasslen. Plaintiff received 415 shares of preferred stock of Countryside General, Inc., which corporation was the parent corporation of Modular. * * *

"On April 28, 1971 the bank started an action to foreclose the mechanic's lien of Modular which had been assigned to the bank. Pursuant to application by Hasslen the District Court made an Order dated June 22, 1971, determining that the sum of $34,715.37 was the sum necessary to be deposited by Hasslen in order to discharge the mechanic's liens. On July 13, 1972 Judge Stahler made Findings that Modular did not complete the contract with Hasslen and that Hasslen had to expend $2,776.25 by reason of Modular's breach of contract. The Conclusions of Judge Stahler provided that out of the money on deposit with the Clerk the mechanic's liens be paid in full, except that the bank was to be paid $3,672.97. These sums total $16,098.50. The Conclusions further provided: 'That the Clerk of Court should retain the sum of $4,101.50 which should be held by said Clerk pending the trial and further order of the Court in the action of Barnes Trucking Co., Inc., plaintiff, versus

the construction of low-cost housing, just as CWS Development Company (hereinafter CWS) did in Pipestone.[2] Hasslen then entered into a subcontract with Modular to construct and deliver the housing units and place them on foundations. Barnes was hired by Modular to transport the units from Pipestone to Ortonville. It is conceded that the reasonable value for Barnes' services in so doing is the sum of $4,101.50, which is unpaid.

Modular, due to financial difficulties, obtained substantial loans from Park Plaza State Bank of St. Louis Park (hereinafter Park Plaza). Modular filed a mechanics lien dated December 24, 1970, for the work and material it had furnished in performing the contract, then assigned the lien to Park Plaza on the same day.

On January 25, 1971, Modular filed an application with the District Court of Pipestone County for a compromise with the corporation's creditors pursuant to Minn. St. 301.55.[3] The pro-

---

Hasslen Construction Company, Modular Structures, Inc., and Park Plaza State Bank of Saint Louis Park, defendants.' These items total $20,500.00 and the Court ordered the balance of the fund on deposit with the Clerk, namely $14,215.37, to be returned to Hasslen."

[2] See, Park Plaza State Bank v. CWS Development Co. 303 Minn. 306, 227 N. W. 2d 560 (1975).

[3] Minn. St. 301.55 reads: "Subdivision 1. When a compromise or arrangement is proposed between a corporation and its creditors or any class of them, or between the corporation and its shareholders or any class of them, or between the corporation and both creditors and shareholders or any class or classes of them, the court may, upon the application of the corporation or of a liquidating trustee or receiver thereof, order a meeting of the creditors or class of creditors, or of the shareholders or class of shareholders, as the case may be, to be called in such manner as the court may direct.

"Subd. 2. If the majority in number representing three-fourths in value of the creditors or class of creditors, or if the shareholders or class of shareholders holding three-fourths of the voting power of all shareholders or of the class of shareholders, as the case may be, agree to any compromise or arrangement or to a reorganization of the corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanc-

posed compromise was approved by the required number of creditors and judgment approving the compromise entered on March 11, 1971. Barnes as a creditor of Modular consented to the compromise but on its "Proof of Claim and Vote on Arrangement" noted that it reserved the right to proceed directly against Hasslen. Barnes received 415 shares of preferred stock of Countryside General, Inc., as a result of the compromise but now claims that these shares are valueless.

On April 28, 1971, Park Plaza commenced an action to foreclose the mechanics lien which Modular had assigned to it.[4] Other subcontractors and materialmen who had filed mechanics liens were joined as parties. Barnes had not filed a mechanics lien for its services.

As a result of that action, which came before Judge Stahler, Hasslen deposited $34,715.37 with the clerk of the district court to satisfy the mechanics liens filed against the project. Judge Stahler ordered the liens paid and further ordered that $4,101.50 plus $300 for costs be held by the clerk pending judicial determination of Barnes' claim.

Modular was discharged in bankruptcy in 1973.

It is clear that the money deposited with the clerk of court for a release of the mechanics liens filed against the project stands in the place of the property released. Barnes had not filed a lien, so clearly it was not entitled to share in the deposit made to release the liens. Had it filed such a lien, it would undoubtedly have been paid, as the other lienholders were. Minn. St. 514.10 clearly provides in part that:

---

tioned by the court, be binding on all the creditors or class of creditors, and on all the shareholders or class of shareholders, as the case may be, and also on the corporation and its liquidating trustee or receiver, if any.

"Subd. 3. If the articles of incorporation so provide, the corporation shall not be subject to the provisions of this section."

[4] The parties have stipulated that the records in the mechanics lien action are incorporated into this action by reference.

"* * * The lien claimant shall have the same right of lien against such money deposit that he had against the property released."

From this language it must follow that where there is no lien, there is no right to the deposit made to release other liens.

Apparently, Barnes proceeds on the theory that even though it had no lien, it is somehow a third-party beneficiary of the subcontract between Modular and Hasslen, and that Hasslen, by failure to withhold money for the purpose of paying claims, is indebted to it. At the outset it must be apparent that Barnes by entering into the compromise with Modular has released its claim against Modular. At no time did it deal with or have any contract with Hasslen. As a matter of fact, Hasslen did not know of its claim until the present action was commenced. The portion of the subcontract which Barnes apparently now relies on reads:

"That if notification of any claims have been made against the Sub-Contractor or the Contractor arising out [of] labor or materials furnished the project covered by this agreement, or otherwise on account of any actions or failures to act by the Sub-Contractor in the performance of this agreement, the Contractor may, *at his discretion*, withhold such amounts otherwise due or to become due hereunder to cover said claims and any costs or expenses arising or to arise in connection therewith pending legal settlement thereof." (Italics supplied.)

It is true that this provision of the contract undoubtedly gives the contractor the right at his discretion to withhold payments to make sure that the claims of laborers and materialmen are paid. However, the language does not permit the construction now sought by Barnes that it is mandatory for the contractor to withhold such funds. Obviously, the purpose of this type of contract provision is to protect the contractor from unpaid claims of those who have a charge against the project. Here again, had Barnes filed a mechanics lien, it might have a good argument. But in the absence of such lien, there is no require-

ment in this contract that Hasslen must withhold money to pay Barnes. Thus, it follows that Barnes has no right to the funds deposited with the clerk of court to obtain a release of the mechanics liens. It has compromised its right against Modular. It has no claim against Hasslen because there was no agreement by Hasslen to pay it. It follows that the trial court properly dismissed the action.

The best that can be said for Barnes is that if it had not compromised its right, it would stand in the position of an unsecured creditor of Modular.

Affirmed.