**David Paul BROTZLER, Appellant,**

v.

**COUNTY OF SCOTT, et al., State Police (f.k.a. Minnesota State Highway Patrol), et al., City of Cottage Grove, City of Shakopee, et al., Respondents.**

No. C1–87–2329.

Court of Appeals of Minnesota.

July 19, 1988.

Review Denied Sept. 16, 1988.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for Scott County, et al.

Hubert H. Humphrey, III, Atty. Gen., Mark B. Levinger, Jerilyn K. Aune, Jeffrey S. Bilcik, Sp. Asst. Attys. Gen., St. Paul, for State Police (f.k.a. Minnesota State Highway Patrol), et al.

Rae L. Randolph, Pierre N. Regnier, Jardine, Logan & O'Brien, St. Paul, for City of Cottage Grove.

Richard H. Kyle, R. Ann Huntrods, Briggs and Morgan, St. Paul, for City of Shakopee, et al.

Heard, considered and decided by CRIPPEN, P.J., and FOLEY and LOMMEN *, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the trial court's granting summary judgment dismissing all of appellant David Paul Brotzler's claims. The trial court found that the facts alleged by appellant were insufficient to support any of his claims. We affirm.

## FACTS

Appellant David Paul Brotzler was arrested and prosecuted on multiple counts of theft by swindle, failure to register motor vehicles, failure to pay state motor vehicle tax, fraudulently applying for certificates of title, and other related charges. The facts supporting the alleged criminal activity involve Brotzler's business, Valley Auto Plaza, which sold recreational motor vehicles on consignment. Brotzler's two business associates were also arrested on similar charges and entered guilty pleas to some of the offenses. At Brotzler's criminal trial, the court granted Brotzler's motion for judgment of acquittal at the close of the state's case, finding that the state had failed to prove a prima facie case. The state's key witness was unable to testify at the last minute.

Jerrold M. Hartke, The Hartke Law Firm, South St. Paul, for David Brotzler.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

The judgment of acquittal was entered on September 7, 1983. On September 5, 1985, Brotzler initiated this action against respondents Scott County, the county attorneys, the Minnesota State Highway Patrol, the cities of Shakopee and Cottage Grove, and every law enforcement agency and individual involved in the investigation. Brotzler's amended complaint alleges claims for conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1983 and various state law torts including malicious prosecution, misrepresentation, and false arrest.

Respondents moved for summary judgment three times. On September 10, 1986, the court dismissed punitive damages claims, reserving the issue of prosecutorial immunity. On April 1, 1987, the court dismissed the claims against respondents Kathleen Morris and Rick Virnig individually, based on *In re Scott County Master Docket*, 618 F.Supp. 1534 (D.Minn.1985) (*Master Docket I*). That case was appealed, and on February 3, 1987, the Eighth Circuit released its decision on the consolidated appeals in *Myers v. Morris*, 810 F.2d 1437 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

After reviewing *Myers*, respondents brought their motion again, and on September 4, 1987, the trial court granted summary judgment dismissing all of Brotzler's claims, finding that even assuming all Brotzler's allegations to be true, the facts were insufficient to support his claims. Specifically, the court found that the prosecutors and the investigating police officers were entitled to immunity; the governing bodies could not be held liable on a respondeat superior theory because Brotzler had failed to show the required "custom or policy;" the § 1983 claim was barred by the two-year statute of limitations; and the remaining state law claims were also barred by the two-year statutes of limitation. Brotzler appeals these rulings.

The criminal charges brought against Brotzler involved Valley Auto. Brotzler was the sole owner of the business and employed Robert McElhaney and Richard Breiland, both of whom had recently been convicted of felonies arising out of a similar but unrelated business in Cottage Grove. The attention of Shakopee Police was first drawn to Valley Auto on June 8, 1982, when a customer of Valley Auto contacted Sergeant Dennis Anderson of the Shakopee Police regarding a recreational vehicle the customer had consigned to Valley Auto for sale. The customer complained that Valley Auto refused his repeated requests to either return the vehicle or pay him the money, even though the consignment agreement had expired on May 17, 1982. The agreement provided that Valley Auto would pay the customer $9,500 within 15 days of the sale of the vehicle.

Later that day, Anderson and the customer went to Valley Auto. According to Brotzler's affidavit, Brotzler tried to explain the transaction to Anderson, attempting to show paper work demonstrating that the parties had agreed to an extension of time. It is undisputed that Brotzler refused to return the vehicle or pay the customer. At this point, Anderson telephoned Morris, who advised arrest. After giving Brotzler a final opportunity to either return the vehicle or pay the customer, Anderson arrested Brotzler.

The attention of Morris and the Minnesota State Highway Patrol had previously been drawn to Valley Auto. Cottage Grove Police Officer Michael Halpern, who had been responsible for the prior investigation and conviction of McElhaney and Breiland, continued to observe their activities after they moved to Valley Auto. At some point in the spring of 1982, Morris and Highway Patrol Sergeant Phillip Hodapp joined Halpern in the investigation of Valley Auto. The day after Brotzler's arrest, Morris obtained a search warrant for Brotzler's business and home, taking substantially all of his business records.

Brotzler was arrested at 6:35 p.m. on June 8, 1982 and released on June 11, 1982 after a court appearance. He was first formally charged by written complaint on June 10, 1982, and additional complaints were charged in July and August of 1982. Brotzler's trial took place in August of

1983. In the interim between his arrest and trial, Brotzler's business records were kept first by the Shakopee police and then by the Highway Patrol. He alleges that he had great difficulty in obtaining copies of these records, which were being held pursuant to a court-ordered search warrant. As the trial court noted, at no time did Brotzler advise the court of these difficulties or request a court order to expedite the production of the copies.

Valley Auto was closed down in August 1982, when Brotzler's dealer's bond was canceled. The state submitted evidence, which Brotzler did not controvert, showing that Brotzler never applied for a new license to do business nor made any attempt to go back into business.

### ISSUE

Did the trial court err in ruling as a matter of law that the facts alleged by Brotzler were insufficient to support any of his claims?

### ANALYSIS

On appeal from summary judgment, the function of the reviewing court is to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence will be considered in the light most favorable to the nonmoving party. *Nord v. Herried*, 305 N.W.2d 337, 339 (Minn.1981).

### 1. *Prosecutorial Immunity*

Prosecutors are entitled to absolute immunity from civil damages arising out of the prosecutor's conduct in initiating adversarial proceedings and presenting the state's case. The leading Supreme Court case on prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), which was cited with approval and adopted by the Minnesota Supreme Court in *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210 (Minn.1981). In *Brown*, the supreme court found that the prosecutor was entitled to absolute immunity, even in the face of allegations of

negligent, wanton and willful conduct, quoting the following policy considerations from *Imbler:*

> "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."

*Brown*, 314 N.W.2d at 213 (quoting *Imbler*, 424 U.S. at 427, 96 S.Ct. at 993).

More recently, and on facts directly analogous to the present case, the Eighth Circuit applied the rule of *Imbler* to find that the prosecutor was entitled to absolute immunity in the face of charges of conspiracy, fraud, malice, coercion and violation of constitutional rights and state law. *Myers*, 810 F.2d at 1444. In *Myers*, parents charged with child sexual abuse brought a civil suit against the prosecutor and various law enforcement officials after the criminal charges were dropped. The Eighth Circuit reasoned that the conduct complained of essentially amounted to conduct inherent in prosecutorial functions and held that the absolute immunity for performance of those functions was not defeated by allegations of improper motivation such as malice, vindictiveness, or self-interest. *Id.* at 1446.

The *Myers* court went on to rule that, with the possible exception of the alleged destruction of evidence, all of the claims against the prosecutor involved her role in initiating adversarial proceedings and presenting the state's case. Based on the policy reasons enumerated in *Imbler*, the court held that the prosecutor was entitled to absolute immunity and therefore to summary judgment on all claims.

The analysis in *Myers* is persuasive in the present case with respect to Morris and Virnig. While couched in the language of conspiracy, the allegations against Morris and Virnig involve initiation and prosecu-

tion of a case. Brotzler attempts to argue that some of the conduct complained of lies outside the scope of a prosecutor's role. The claims which Brotzler refers to are unlawful arrest, obstruction of justice, and conspiracy.

Regarding unlawful arrest, Brotzler argues that the present case is distinguishable from *Myers* because here Morris directly participated in the arrest by ordering it over the phone. However, a close reading of *Myers* reveals that the court did in fact find that absolute immunity protected the prosecutor's advice to officers regarding whether probable cause to arrest existed:

> [The prosecutor] did advise officer Norring and deputies Busch, Morgan and Pint that in her opinion facts related to her constituted probable cause to arrest and charge the plaintiffs. Her opinions in this respect certainly contributed causally to the plaintiff's arrests. We hold that in providing advice to law enforcement officials concerning the existence of probable cause and the prospective legality of arrests, [the prosecutor] was functioning in a quasi-judicial capacity as a prosecutor initiating the formal judicial process.

*Myers* at 1448.

Brotzler alleges that the prosecutor obstructed justice by intimidating a witness in a civil case being defended by Brotzler. According to the witness' affidavit, a state trooper appeared at the civil trial and approached the bench, at which time the judge read an arrest warrant for the witness for drunk driving in Shakopee. No connection is made by Brotzler between this alleged incident and Morris, Virnig or Scott County. Further, no evidence is submitted to show that the alleged conduct was not prosecutorial in nature. Even if true, these conclusory allegations are not factually sufficient to defeat summary judgment on the obstruction of justice claim.

Finally, regarding conspiracy, Brotzler alleges that the goal of the prosecutors was to put him out of business, depriving him of property without due process in violation of § 1983. Again, this issue was directly confronted in *Myers*, where the court found that the plaintiff had failed to show a constitutionally impermissible motive or a common purpose. *Id.* at 1452–53.

As in *Myers*, there is no evidence in this record, or even in Brotzler's brief, to show that any of the alleged conspirators had even the slightest improper motive for targeting Brotzler. Why the alleged conspirators should conspire to put Brotzler out of business is not apparent. As in *Myers*, Brotzler's "assertions of improper conspiratorial purpose amount to no more than unsupported allegations of malice." *Id.* at 1453.

The trial court properly found that these assertions are not sufficient to defeat Morris' absolute immunity. As stated in *Myers*, "more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy is required" to defeat immunity. *Id.* at 1453.

### 2. *Qualified Immunity*

Qualified immunity extends to police officers seeking an arrest warrant unless, when judged on an objective standard, *"no reasonably competent officer would have concluded that a warrant should issue."* *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The trial court relied on *Malley* in dismissing Brotzler's claims against the police officers. The Eighth Circuit recently cited with approval the decision in *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir.1985), which extended the qualified immunity doctrine as it applies to arrest warrants to warrantless arrests as well. *Myers*, 810 F.2d at 1455. The court in *Myers* went on to state that in analyzing qualified immunity in the context of an arrest, the issue is not whether probable cause exists in fact, but whether there is *arguable* probable cause. *Id.* at 1455.

■ This case involves a warrantless arrest by Anderson. Brotzler cannot show that no reasonably competent officer would have concluded that an arrest was proper. Brotzler argues that his arrest was wrong-

ful because no judicial determination with respect to probable cause for the *arrest* was ever made.[1] However, as the trial court correctly found, this allegation is not sufficient to defeat qualified immunity. The Supreme Court in *Malley* emphasized that mistaken judgments by police officers are still protected by qualified immunity. *Malley*, 475 U.S. at 345, 106 S.Ct. at 1098.

In making the arrest, Anderson relied on the statements made by the customer and the advice of Morris in determining whether to arrest Brotzler. A police officer is entitled to rely on information provided by the victim of a crime, absent some indication that the victim was not reasonably trustworthy or reliable. *Clay v. Conlee*, 815 F.2d 1164, 1168 (8th Cir.1987). Brotzler has not presented any reason why Anderson should not have trusted the customer. Based on the customer's statements, it was objectively reasonable for Anderson to conclude that there was probable cause to arrest.

■ Regarding the remaining law enforcement personnel, the claim which Brotzler appears to be asserting against them is conspiracy to put him out of business. The issue of qualified immunity in the face of allegations of conspiracy was directly confronted by the court in *Myers*. *See id.* at 1452–54.

In *Myers*, the plaintiffs alleged that their arrests, prosecution and separation from their children were not for legitimate purposes, but rather were part of a conspiracy to violate their civil rights. As stated in the foregoing analysis of absolute immunity, Brotzler has failed to show any motive or common purpose for the alleged conspiracy, such as personal dislike or revenge. The conclusory allegations of conspiracy are unsupported by any specific facts. As the Eighth Circuit held in *Myers*, conclusory and unsupported allegations of conspiracy fail to defeat a defense of qualified

immunity where the party is otherwise entitled to that defense. *Id.* at 1453.

### 3. *Governmental Units*

Once the police officials and county attorneys are dismissed, the remaining respondents are Scott County and the cities of Shakopee and Cottage Grove.

■ To hold a municipality liable for constitutional violations in a § 1983 action, the alleged conduct must be part of a municipal practice, policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). A municipality cannot be held liable solely on a respondeat superior theory, absent this showing of practice, policy or custom. *Id.* The trial court found that Brotzler's allegations of municipal custom or policy were weak and unsupported.

Brotzler's § 1983 claim involves allegations that Scott County, Shakopee and Cottage Grove conspired to deprive him of his property without due process. To avoid frivolous conspiracy suits under § 1983, the complaint must allege with specificity material facts showing the existence and the scope of the alleged conspiracy. *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). Brotzler's claims were properly dismissed as bare allegations without factual support.

■ Even if Brotzler could show facts to support his allegations of conspiracy, the local governments would not be liable. Brotzler argues that Morris and Halpern are by definition municipal policy makers, therefore Cottage Grove and Scott County are liable for their conduct. Apparently, this is also the theory under which Brotzler seeks to hold Shakopee liable.

Liability on the part of Scott County was directly addressed in *In re Scott County Master Docket*, 672 F.Supp. 1152 (D.Minn.

---

**1.** Brotzler's argument that no judicial determination of probable cause to arrest was ever made is surprising in light of the fact that Brotzler's counsel on appeal also represented him at the omnibus hearing in the criminal matter in February 1982. At that time, Brotzler raised lack of probable cause to *charge,* and challenged

admissibility of certain evidence, but did not raise lack of probable cause to *arrest.* Thus, the trial court was never presented with an opportunity to rule on probable cause for the arrest. Incidentally, after a two-day hearing involving oral testimony, the trial court found probable cause to charge.

1987) (*Master Docket II*), where the federal district court stated that

> the County may derivatively avail itself of the prosecutor's absolute immunity in a § 1983 action which seeks to hold the county liable for the prosecutor's actions.

*Id.* at 1187. The court further stated: "Each of the policy concerns enunciated in *Imbler* is implicated in such a suit." *Id.* at 1189. The federal court went on to grant summary judgment in favor of Scott County. *Id.* at 1190. The policy considerations of *Imbler* have previously been adopted by this state in holding that prosecutors are entitled to absolute immunity. *Brown*, 314 N.W.2d 210, 214. Those policy considerations also persuade us to hold that a county may avail itself of the prosecutor's absolute immunity.

■ Regarding Cottage Grove, Brotzler has cited no authority for his proposition that a police chief is a policy maker. Neither has he presented any facts to show that the allegedly unconstitutional conduct of Anderson reflected a policy or custom of Shakopee.

■ Finally, Minnesota Highway Patrol correctly points out that it is an agency of the state and is therefore not a "person" subject to suit under 42 U.S.C. § 1983. *See Monnell*, 436 U.S. at 690, 98 S.Ct. at 2035; *Auubchon v. State of Missouri*, 631 F.2d 581, 582 (8th Cir.1980), *cert. denied*, 450 U.S. 915, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981).

4. *Discovery*

■ Throughout his brief, Brotzler asserts that summary judgment was improper because he did not have enough time to conduct discovery. The action was commenced on September 5, 1985. On September 10, 1986, the trial court granted Brotzler's request to defer ruling on the summary judgment based on time for discovery, even though Brotzler had conducted *no* discovery since the suit was initiated. Brotzler served his only discovery, interrogatories and document requests, in late January and February of 1987. No depositions were ever scheduled. Brotzler made no statements as to what specific discovery was yet to be completed. Brotzler's own dilatory tactics should not prevent summary judgment.

5. *Statutes of Limitation*

The conspiracy claim and the § 1983 claims were properly dismissed on the merits. Brotzler's argument that the trial court erred in finding that they were also time barred does not compel reversal. The state law claims for tortious interference with contract, slander and libel, malicious prosecution and false imprisonment were also properly dismissed based on immunity. Therefore, we need not address whether the claims were also time barred. The trial court's grant of summary judgment was proper in all respects.

## DECISION

Affirmed.