Edward J. RICO, Respondent,

v.

STATE of Minnesota, et al., Appellants.

No. C5–90–397.

Court of Appeals of Minnesota.

Aug. 14, 1990.

Review Granted Oct. 5, 1990.

William Starr, Mark L. Seeger, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Alan C. Page, Asst. Atty. Gen., St. Paul, for appellants.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and MULALLY *, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from an order denying summary judgment to appellants State of Minnesota and William J. Gregg, who is the Commissioner of the Department of Veterans Affairs.' The district court determined a material issue of fact existed as to whether the termination of respondent Edward J. Rico was in violation of his rights under the first amendment of the United States Constitution, thus rendering the doctrines of official, qualified, and sovereign immunity inapplicable to this action. The State and Gregg contend that these immunities should apply, and further that while acting in their official capacity they cannot be sued for violations of constitutional rights protected by 42 U.S.C. § 1983. We agree and reverse.

## FACTS

Rico was a State employee from January 19, 1975 through August 19, 1986. During his tenure with the State, Rico held a number of positions at various agencies, including the Department of Veterans Affairs (DVA). In March 1983, Rico was appointed to the position of Personnel Director I at the DVA. In July 1983, Rico became a Personnel Director II. Both jobs were civil service classified and operated out of the Minneapolis Veteran's Home (Home).

In October 1984, Rico was appointed Gregg's Assistant. This was an unclassified position, for which Rico took a leave of absence from the classified Personnel Director II position. Subsequent to his leave of absence, the Personnel Director II position was abolished.

While Assistant, Rico made a number of complaints to Gregg and Deputy Commissioner Jeff Olson. Apparently, Rico believed that he was not allowed sufficient input into the operation of the Home and that the facility was mismanaged.

On July 8, 1986, Rico met with Gregg, Olson, and the Governor's Deputy Chief of Staff, Lynn Anderson. At the meeting, Rico expressed a number of concerns regarding the operation of the DVA. His allegations included: (1) a former director of nursing was dismissed due to lack of funding while other officials at the DVA received large salary increases; (2) the financial management director received an illegal salary increase; (3) there was fiscal mismanagement at the Home; (4) a deputy commissioner attempted to receive an illegal pay increase and had accepted race track tickets and overnight lodging at the hotel of an individual seeking funds for a private veterans home; (5) Rico's assignment to the Home was illegal; and (6) senior DVA officials misused DVA funds for personal benefit.

These allegations of illegal activity were looked into by the Governor's staff and found to be without basis. There was also a Department of Administrative Management study and a Health Department report on the Home prepared in 1987. These reports found substantial problems in the administration of the Home, but cited no criminal illegalities regarding administration of the Home or the DVA.

On July 25, 1986, Gregg informed Rico he was being discharged from his job as Assistant effective August 19, 1986. Rico chose not to exercise his right to bump a less senior employee of the DVA as he felt the position was unacceptable for someone with his level of experience.

Rico commenced an action with the State Department of Human Rights which was dismissed for lack of jurisdiction. He commenced the present action against State and Gregg in August 1986, alleging wrongful termination and breach of contract. The State and Gregg moved for summary judgment on the grounds of failure to state an actionable claim. Partial summary judgment was granted, dismissing Rico's contract claim. The State and Gregg then moved for summary judgment on the wrongful termination claim, assert-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ing qualified, official, and sovereign immunity.

In denying the second summary judgment motion, the district court concluded there is a material question of fact as to whether Rico's first amendment free speech rights were violated. It determined none of the immunities apply if such a violation is proved at trial.

This appeal followed.

## ISSUE

Did the trial court err in finding the State and Gregg are not immune from suit for wrongful termination in violation of Rico's first amendment rights?

## ANALYSIS

The State and Gregg contend the district court erred in denying their motion for summary judgment. Specifically, they contend a state and its officers acting in their official capacity may not be sued for violation of constitutional rights protected under 42 U.S.C. § 1983. Additionally, the State argues it is entitled to sovereign immunity, and Gregg claims qualified and discretionary immunity.

■ Denial of a motion for summary judgment is appealable when the motion is based on a claim of governmental immunity. *Anderson v. City of Hopkins*, 393 N.W.2d 363 (Minn.1986). The *Anderson* decision relies on reasoning from the United States Supreme Court that a district court order denying summary judgment is final if it "determines a claim of right 'separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Anderson*, 393 N.W.2d at 363 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 524–25, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985)). *Anderson* further cites the *Mitchell* court's conclusion that

an order denying summary judgment on the ground of immunity from suit is a final judgment or order for purposes of appealability * * * because the immunity is an *immunity from suit* rather than a mere defense and the immunity is effectively lost if a case is erroneously permitted to go to trial.

*Anderson*, 393 N.W.2d at 364 (emphasis in the original). Given this jurisdiction, the question before this court is necessarily a narrow one.[1]

The State and Gregg contend this is an action under 42 U.S.C.A. § 1983 (West 1981) which provides:

Every person who, under color of [state law] subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

■ This court has implicitly held a suit for wrongful termination for exercise of first amendment free speech rights is a section 1983 action. *McIntire v. State*, 419 N.W.2d 799 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 20, 1988). *McIntire* determined the district court in these types of actions must apply the test for qualified immunity pursuant to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In addition, our supreme court has held the *Harlow* principle of immunity is only applicable to section 1983 actions and will not be applied to state common law tort actions. *Elwood v. Rice County*, 423 N.W.2d 671, 676–77 (Minn. 1988).

■ We therefore agree with the State and Gregg that this is a section 1983 action. We are also compelled to agree that a state and its officers acting in their official capacity may not be sued under section 1983. The United States Supreme Court has recently held "that neither a

---

1. Although the parties thoroughly briefed and argued the issues of whether the district court properly determined there is a fact question as to violation of Rico's first amendment rights, and whether the court properly applied the test for this under *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), those questions are not properly before the court at this time. Therefore, for purposes of this opinion, we will assume a jury question exists as to deprivation of first amendment rights.

State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police,* —— U.S. ——, ——, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

In *Will,* an employee of the Michigan Department of State Police sued in state court, alleging he was denied a promotion because his brother had been the subject of a "red squad" file maintained by the department. The district court found a violation of Will's constitutional rights and allowed a section 1983 action to go forward against the state and its officers in their official capacity. The Michigan Supreme Court dismissed, holding the state and state officials are not persons under section 1983. In affirming, the United States Supreme Court noted:

> Congress, in passing § 1983, had no intention to disturb the States Eleventh Amendment immunity and so alter the Federal–State balance * * *. Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.

*Will,* —— U.S. at ——, 109 S.Ct. at 2309.

The effect of this holding brings jurisdiction of this matter squarely before this court, considering the analogous *Anderson* reasoning that a dismissal on the grounds of immunity acts as a final judgment. Dismissal on the grounds of a state's eleventh amendment immunity similarly acts as a final judgment. This point is suggested by the dissent in *Will:*

> If States are not "persons" within the meaning of § 1983, then they may not be sued under that statute regardless of whether they have consented to suit. Even if, in other words, a State formally and explicitly consented to suits against it in federal or state court, no § 1983 plaintiff could proceed against it because States are not within the statute's category of possible defendants.

*Id.,* —— U.S. at ——, 109 S.Ct. at 2319 (Brennan, J., dissenting).

Given the clear mandate of *Will,* we are compelled to reverse the district court and dismiss the wrongful termination suit against the State and Gregg in his official capacity.[2] As we find this issue to be dispositive, we decline to address the issues of qualified, official, and sovereign immunity.

### DECISION

The decision of the district court is reversed, judgment to be entered for the State and Gregg.

Reversed.

---

**2.** We do not consider whether a claim under the state constitution would bring the claim outside the harsh directive of *Will.* This argument was not raised before this court. Additionally, from an institutional perspective, we believe such a change in the law would be better made by the Minnesota Supreme Court.