**Shirlee STONE, Respondent,**

v.

**Dana BADGEROW, Commissioner of the Minnesota Department of Administration, et al., Appellants.**

**No. C3–93–1496.**

Court of Appeals of Minnesota.

Feb. 1, 1994.

Review Denied April 19, 1994.

Hubert H. Humphrey, III, Atty. Gen., Steven M. Gunn, Asst. Atty. Gen., St. Paul, for appellants.

Alan W. Weinblatt, Weinblatt and Davis, St. Paul, for respondent.

Considered and decided by KALITOWSKI, P.J., and DAVIES and FOLEY *, JJ.

## OPINION

DAVIES, Judge.

The Governor and Commissioner of Administration challenge denial of qualified immunity from employee's section 1983 claim of wrongful discharge. We reverse.

## FACTS

In July 1988, the Minnesota Department of Administration hired respondent Shirlee Stone as an unclassified temporary employee in its Intertechnologies Group. When promoted to "Division Director II" in December 1988, Stone executed a "Memorandum of Understanding" indicating that (1) her position was temporary and unclassified (outside civil service protection); (2) the state made no promises that her position would become permanent; and (3) the terms and conditions of her employment would be governed by the "Managerial Plan." Stone's appointment, initially lasting until June 30, 1990, was extended twice that year.

In November 1990, appellant Arne Carlson was elected governor. He appointed appellant Dana Badgerow Commissioner of the Department of Administration. On March 12, 1991, Commissioner Badgerow terminated respondent, explaining that "the department and bureau will best be served by a change of leadership." Respondent alleges, however, that appellants wrongfully fired her because she was not a Carlson supporter.

Respondent filed a section 1983 action against both Commissioner Badgerow and Governor Carlson in their personal and official capacities, alleging a violation of freedom of association.[1]

In support of her action, respondent alleges "on information and belief" that Governor Carlson and several unknown parties "began developing information about the political loyalties" of state employees. Respondent alleges that Governor Carlson, Commissioner Badgerow, and the unknown parties conspired to identify and purge non-Carlson supporters and replace them with Carlson supporters. Respondent supported her allegation with a copy of a contemporaneous newspaper article. In the article, a spokesperson for the Governor suggested that the Governor might terminate unclassified employees who, for political reasons, were impeding the implementation of the Gover-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. She also alleges (1) breach of contract, (2) a violation of various provisions of civil service law, Minn.Stat. ch. 43A, and (3) discrimination under the Minnesota Human Rights Act. Only the section 1983 action is at issue on this appeal.

nor's policies. Respondent also supported her allegation with a copy of a questionnaire that inquired whether each employee was a Carlson supporter.

Respondent failed, however, to offer any proof that appellants drafted, circulated, or used the questionnaire; nor did respondent offer evidence that she herself completed and returned the form. And Commissioner Badgerow, to the contrary, stated that she knew nothing of respondent's political affiliations at the time of the termination. Commissioner Badgerow also denied that she developed or used the questionnaire and stated that she did not discuss respondent's dismissal with Governor Carlson. In her affidavit, Commissioner Badgerow states that she terminated Stone after becoming aware of management deficiencies on the part of Stone.[2] Commissioner Badgerow further states that she determined that respondent was an at-will employee, and terminated her based on performance, not on politics.

On an earlier appeal, taken after the district court denied a motion to dismiss the section 1983 claim, this court remanded in an unpublished opinion on the issue of qualified immunity, but affirmed on the "narrow issue" of whether respondent presented facts sufficient in ordinary circumstances to support her claim.

On remand, the district court found that Stone alleged facts sufficient to suggest that appellants terminated her because of her political beliefs. The district court concluded that Stone was not a political appointee and that her dismissal violated her "clearly established right to freedom of association," thus defeating the defense of qualified immunity. This appeal followed.

## ISSUES

I. Did the district court err in holding that the law supporting appellants' claim was sufficiently clearly established to defeat qualified immunity?

II. Did respondent, in the face of a qualified immunity defense, offer sufficient proof that appellants terminated her for political reasons?

## ANALYSIS

■ This court may review a denial of qualified immunity even where the plaintiff has also alleged causes of action to which qualified immunity would not apply. *Stone v. Badgerow,* No. C3–92–63, 1992 WL 174666 (Minn.App. July 16, 1992). Whether an official's conduct is protected by qualified immunity is generally a question of law. *Finch v. Wemlinger,* 361 N.W.2d 865, 870 n. 7 (Minn. 1985).

### I. Qualified Immunity

### Protection of Freedom of Association

■ The First Amendment prohibits the dismissal of a public employee if the dismissal is solely on the basis of the employee's private political beliefs. *Branti v. Finkel,* 445 U.S. 507, 516–17, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). Since Stone does not allege that she engaged in any expressive activity, her claim implicates only freedom of association, not freedom of speech. (This employee protection is, we note, independent of civil service.)

■ Some politically-based dismissals are legal. For example, dismissal from a government position is permitted when party affiliation is an acceptable requirement for the position. *Id.* In identifying "political" positions, the ultimate inquiry is whether "party affiliation is an appropriate requirement for the effective performance" of the position; important additional criteria are whether the position requires confidentiality or involves policymaking. *Id.* at 518, 100 S.Ct. at 1294–95.

### Immunity Defense

■ In addition to defense on the merits, officials are accorded qualified immunity

**2.** Respondent's alleged deficiencies included (1) violating a union agreement leading to an unfair labor practice charge against the state, (2) unorthodox hiring practices causing criticism by the Department of Employee Relations; (3) an oppressive management style; and (4) citation by the legislative auditor for various financial missteps.

from suit when sued in their personal capacity.[3]

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The contours of the right allegedly violated must be clearly established in a particularized way so "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, a plaintiff does not overcome an official's claim of immunity by simply asserting a general constitutional right; the plaintiff must show that a reasonable official would have known that their specific action was in violation of clearly established law. *Id.* at 641, 107 S.Ct. at 3040.

■ The scope of the qualified immunity doctrine is sufficiently broad to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In the context of political discharge claims, an official enjoys qualified immunity as long as the position

> potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication.

*Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1259 (1st Cir.1987). Accordingly, qualified immunity protects public officials unless the particular position is so obviously non-political that a reasonable official would clearly know that dismissal would be unlawful. *Figueroa–Rodriguez v. Lopez–Rivera,* 878 F.2d 1478, 1480 (1st Cir.1989) (en banc).

■ Because qualified immunity is an affirmative defense, the official bears the burden of *pleading* qualified immunity. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980). But once the official raises qualified immunity, the plaintiff "must establish that the [official's] action was objectively legally unreasonable." *Reuter v. City of New Hope,* 449 N.W.2d 745, 749 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 28, 1990).

■ Our independent review of the record does not disclose that respondent's position was clearly non-political. Under Minnesota statutes, temporary unclassified positions, such as respondent's, may be authorized only for "professional, managerial or supervisory positions." Minn.Stat. § 43A.08, subd. 2a (1992). This suggests a "modicum of policymaking." Thus, it was not clearly established that respondent's position was so non-political that an objective person in appellants' position would have known that dismissing respondent was improper. Accordingly, the district court erred in denying appellants' claim of qualified immunity.

## II. Evidentiary Support

Additionally, we doubt that respondent—under the heightened qualified immunity standard—produced sufficient evidence that appellants dismissed her for political reasons.

■ Qualified immunity is immunity from suit, not just a defense to liability. Thus,

> qualified immunity questions should be resolved at the earliest possible stage to shield [officials] from disruptive effects of broad-ranging discovery and effects of litigation.

*Elwood v. Rice County,* 423 N.W.2d 671, 675 (Minn.1988); *accord Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (issue should preferably be resolved prior to much discovery).

---

3. Respondent sought monetary damages from appellants in their official as well as their personal capacity. But actions brought against state officials in their official capacity are actually suits against the state. *Will v. Michigan,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). And states are not "persons" for purposes of section 1983 actions. *Id.* at 69, 109 S.Ct. at 2311. Thus, respondent may not maintain a section 1983 action for damages against appellants in their official capacity. *Rico v. State,* 458 N.W.2d 738, 740–41 (Minn.App.1990), *aff'd,* 472 N.W.2d 100 (Minn.1991).

Accordingly, to minimize discovery and other burdens of suit, claims against a government official protected by qualified immunity are subject to a heightened standard of evidentiary support. *Elwood,* 423 N.W.2d at 676 (citing *Martin v. Malhoyt,* 830 F.2d 237, 256–57 (D.C.Cir.1987)). The plaintiff must supply greater factual specificity and particularity in her complaint or supporting materials. *Id.*

Once the official asserts qualified immunity, the plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). "The complaint should include 'all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.' " *Id.* at 646 (quoting *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987)); *accord Martin,* 830 F.2d at 257 (plaintiff must "come forward with 'nonconclusory allegations of evidence' " to proceed to discovery).

> "Unless and until the plaintiff both demonstrates a clearly established right and comes forward with the necessary factual allegations, the 'government official is properly spared the burden and expense of proceeding any further.' "

*Sawyer v. County of Creek,* 908 F.2d 663, 666 (10th Cir.1990) (quoting *Powell v. Mikulecky,* 891 F.2d 1454, 1457 (10th Cir.1989)).

Respondent here has not provided evidentiary support for her allegation that appellants actually knew of her political beliefs. She merely alleges that others in her department knew that she was not political. Even her own allegation—that she was not political—supports an inference that, absent some indication of party affiliation on the

questionnaire, appellants had little means of discerning her lack of support for Governor Carlson.[4]

Respondent further alleges that appellants conspired to dismiss her. But section 1983 suits alleging conspiracy must articulate with specificity "material facts showing the existence and the scope of the alleged conspiracy." *Brotzler v. Scott County,* 427 N.W.2d 685, 690 (Minn.App.1988), *pet. for rev. denied* (Minn. Sept. 16, 1988). That has not been done. Additionally, although respondent alleged malice, an allegation of malice does not preclude qualified immunity if the official's conduct was objectively reasonable. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096.

Respondent—confronted with an immunity claim—failed to provide sufficient evidence that appellants dismissed her for political reasons.

## DECISION

Respondent failed to show that the law was clearly established that her particular position was so obviously non-political that a reasonable person in appellants' position would have known that the dismissal was improper. Furthermore, respondent failed to produce sufficient evidence that appellants dismissed her for political reasons. Accordingly, appellants are entitled to qualified immunity from respondent's section 1983 claim.[5]

**Reversed.**

---

4. Respondent supported her complaint in part with a letter from the personnel director of the Department of Administration. The Department of Jobs and Training had determined that she was not entitled to unemployment insurance benefits because respondent occupied a "nontenured policy making and/or advisory position in the unclassified service." The personnel director's letter stated the director's belief that, for the purpose of unemployment benefits, respondent was not a political employee.

But a decision on unemployment benefits does not necessarily indicate the political nature of respondent's position for purposes of qualified immunity.

5. We note that our qualified immunity determination only applies to the section 1983 action. *Harlow* immunity only applies to federal civil rights actions, not to state common law actions. *Elwood v. Rice County,* 423 N.W.2d 671, 676–77 (Minn.1988). Statutory governmental (discretionary function) and common law official immu-

nity protect state officials from claims based on state law. *Rico v. State,* 472 N.W.2d 100, 104–09 (Minn.1991). Although appellants' joint amended answer raised the affirmative defenses of "dis- cretionary immunity, official immunity and governmental immunity," only section 1983 qualified immunity is at issue in this appeal.