**Sue GERBER, as Trustee for the Next-of-Kin of Amy Sue Gerber, Deceased, Respondent,**

v.

**Justin NEVEAUX, et al., Respondents,**

**County of St. Louis, Appellant.**

**No. C7–97–2076.**

Court of Appeals of Minnesota.

June 2, 1998.

Review Denied July 16, 1998.

Richard E. Prebich, Lara Whiteside, Prebich Law Offices, Hibbing, for respondent Gerber.

Robert H. Magie III, Magie, Andersen, Haag, Paciotti, Butterworth & McCarthy, P.A., Duluth, for respondents Neveaux, et al.

Alan L. Mitchell, St. Louis County Attorney, Shaun R. Floerke, Assistant County Attorney, for appellant.

Considered and decided by PETERSON, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This case arises on the claim of respondent, the trustee for the survivors of Amy Sue Gerber, that the automobile occupied by the decedent when she was fatally injured went out of control due to negligence of appellant St. Louis County in building or maintaining the roadway where the incident occurred. The trial court denied appellant's statutory immunity claim on the theory that appellant failed to show its exercise of discretion caused the road defect. Because appellant demonstrated the exercise of discretion relevant to all theories of negligence adequately asserted by the claimant, we reverse.

## FACTS

On July 16, 1996, Amy Sue Gerber died from injuries sustained when the driver of the car she occupied lost control of the vehicle while travelling south on County State Aid Highway # 21 in St. Louis County. According to the accident report, the vehicle had rounded a corner and was headed into a section of straight, level, paved roadway with five-foot wide paved shoulders. The car swerved onto the right paved shoulder and then skidded back into its driving lane, crossed this lane, and slid off the opposite paved shoulder. Respondent filed negligence claims against the co-owner and the alleged driver of the car. The complaint also alleged that appellant failed to "properly inspect, maintain, repair and/or construct" CSAH # 21, that appellant knew or should have known the road was dangerous, and that this dangerous condition was the proximate cause of Gerber's death.

As the case unfolded, respondent contended that appellant negligently created significant drop-offs on the eastern and western sides of the road. Respondent also asserted that if the roadway had been properly inspected, the defect would have been discovered.[1] In defending the claim, appellant contended there was only speculative evidence that the condition existed since 1986, when the road was reconstructed. Moreover, appellant offered an undisputed affidavit that state officials inspected and approved the 1986 reconstruction and that it fully complied with state standards.[2]

Appellant moved for summary judgment on grounds that its actions in constructing and maintaining the road were protected under the doctrine of discretionary immunity or, in the alternative, that respondent failed to show a genuine issue of material fact on its negligence claims. The trial court held that appellant had not shown it exercised discretion in relation to the alleged drop-off and denied appellant's statutory immunity claim. The trial court also denied appellant's motion for summary judgment on the merits, finding the decedent's trustee had raised several genuine issues of material fact. The specific theories of negligence alleged were not discussed by the trial court.

## ISSUE

Did appellant establish its entitlement to immunity upon (a) showing its exercise of discretion on all wrongful acts that plaintiff asserted and also showed by an offer of some evidence, but (b) without proving its exercise of discretion in other conduct that might explain the condition of the road?

## ANALYSIS

■ In an appeal from a summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Whether an immunity defense applies is a question of law, *Elwood v. County of Rice*, 423 N.W.2d 671, 675 (Minn. 1988), which this court considers without deference to the decision of the trial court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

### 1. Scope of review

■ The party who asserts an immunity defense has the burden to demonstrate facts showing that it is entitled to immunity. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997). In this case, we are required to further explore the claimant's burden to show facts related to the immunity defense. *See Baker v. Chaplin*, 517 N.W.2d 911, 916–17 (Minn.1994) (reviewing question of whether claimant's evidence is sufficient to show that the defendant may not succeed in showing an element of its immunity theory); *Carter v. Cole*, 539 N.W.2d 241, 241 (Minn.1995) (without deciding whether review in *Baker* was appropriate, following *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), to hold that the right for interlocutory review on immunity issue does not otherwise extend to trial court's denial of summary judgment on the sufficiency of evidence to show a genuine issue of fact for trial).

■ As a general rule, a county is "subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." Minn. Stat. § 466.02 (Minn.1996). This general rule does not apply to claims "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

---

1. Appellant also contended it was entitled to immunity against this negligent inspection claim because it exercised discretion as to which projects to include in its repair and maintenance plans. If the estate had proven that appellant knew of the defect and knew that it was one requiring immediate attention, there would be adequate evidence to permit a finding of immunity connected with the timing of repairs. However, this issue is irrelevant to appellant's primary assertion that it did not know of the defect and was not negligent in failing to discover it.

2. Appellant contended it was entitled to statutory immunity because there were policy-making decisions associated with its decision to rebuild the highway in 1986. None of these decisions is relevant to whether appellant constructed the road properly.

Minn.Stat. § 466.03, subd. 6 (1996); *Watson v. Metropolitan Transit Comm'n,* 553 N.W.2d 406, 412 (Minn.1996) (recognizing a municipality's "statutory" immunity for discretionary functions under Minn.Stat. §§ 466.02, 466.03, subd. 6).

■ As the exception to the general rule of government liability for common-law tort actions, this doctrine must be narrowly construed. *Cairl v. State,* 323 N.W.2d 20, 23 (Minn.1982). The defendant is entitled to an immediate determination of the immunity claim but has the burden to specifically prove that his conduct fits within the scope of immunity. *See Rehn,* 557 N.W.2d at 333 (Minn.1997). "A court reviewing immunity issues must examine with particularity the nature of the conduct the plaintiff alleges as the basis of a negligence claim." *Watson,* 553 N.W.2d at 411 (citing *Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn.1992)).

■ We hold that once a defendant asserts immunity, the plaintiff has the burden to articulate specifically the claim that must be scrutinized to determine the immunity issue and to make some showing of fact to suggest the basis for the claim. *Cf. Elwood,* 423 N.W.2d at 676 (complaints against public officials require greater factual specificity and particularity); *Stone v. Badgerow,* 511 N.W.2d 747, 751–52 (Minn.App.1994) (discussing heightened evidentiary standard that attaches once an official raises the issue of qualified immunity) *review denied* (Minn. Apr. 19, 1994). In *Elwood,* the Minnesota Supreme Court found that deputy sheriffs who entered a home without a warrant during a domestic dispute were entitled to qualified immunity from a Section 1983 claim. 423 N.W.2d at 676. The court based its determination on a record that included detailed information about the domestic situation that led to the warrantless entry of the plaintiff's home, the deputy's conduct upon entering the home, and applicable police procedure. *Id.* Although the court considered the record sufficiently developed, it observed that the goal of protecting public officials from "broad ranging discovery" is "somewhat contrary to traditional pleading standards." *Id.* Because plaintiffs cannot expect to use discovery to obtain factual support for claims

against public officials, their complaints and supporting materials must contain greater "factual specificity" and "particularity." *Id.*

## 2. Statutory immunity

■ Rooted in the doctrine of separation of powers, statutory immunity is intended to prevent courts from second-guessing "policy-making activities that are legislative or executive in nature." *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 718 (Minn. 1988). In applying the statutory immunity exceptions that apply to actions against municipalities (Minn.Stat. § 466.03, subd. 6) and to actions against the state (Minn.Stat. § 3.736, subd. 3 (1996)), the Minnesota Supreme Court has distinguished between protected "planning-level" conduct and unprotected "operational-level" conduct. *Id.* at 719. To determine whether an activity is a protected planning-level act, the crucial question is "whether the challenged government action involves the balancing of public policy considerations in the formulation of policy." *Holmquist v. State,* 425 N.W.2d 230, 234 (Minn.1988). In contrast, operational decisions relate to the ordinary, day-to-day operation of government. *Id.* at 232. Designed to protect policy-based decisions and prevent the impairment of government, *Nusbaum,* 422 N.W.2d at 719, statutory immunity "protects the government only when it can produce evidence that its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely scientific or professional judgments." *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn.1994).

■ Respondent's first claim against appellant is an allegation of general negligence in the construction of the roadway at issue. Although respondent contends that the alleged defect may have existed since 1986, it has failed to demonstrate any theory of county fault with respect to road construction in 1986. Appellant submitted affidavits showing that the road was constructed in 1986 according to state specifications and that state officials inspected and approved the newly constructed roadway. Appellant did not otherwise attempt to portray the deci-

sion-making that entered into the construction activity.

Based on the evidence provided, we can only conclude that appellant followed established state policy in constructing the roadway, using state specifications and obtaining state approval for design and construction. By challenging appellant's conduct in following established state policy, respondent is challenging that policy. *See Nusbaum,* 422 N.W.2d at 723 (where state engineers followed an established policy, a challenge to their conduct is merely a challenge to that policy). Premised on the determination that courts or juries are not to second-guess policy decisions in this way, the doctrine of statutory immunity precludes respondent's negligent construction claim. *Id.*

Although respondent argues on appeal that the state "failed to properly" apply state standards during construction, it has not identified a relevant standard and it has made no showing regarding county construction conduct, wrongful or otherwise. Even as to the existence of the defect at the time of construction, respondent has offered only speculative evidence comprised of affidavits from a private investigator and an engineer suggesting that the alleged road defect on CSAH # 21 may have been present for many years.

██ Respondent also asserts that appellant's inspections of the CSAH # 21 were inadequate. This claim first rests on the notion that appellant had an inadequate inspection system. Second, respondent suggests that a county inspector, in implementing the county policy, negligently failed to discover the defect. As to the inspection system, appellant demonstrated that it has 18 inspectors who conduct daily inspections of county roadways. It is undisputed that development of a county inspection plan involved policy-making and the exercise of discretion. If any non-immune act occurred, it had to be in the failing of an individual inspector.

██ As to the conduct of inspectors, appellant submitted an affidavit of the inspector in charge of CSAH # 21, providing undisputed evidence that this employee inspected the road every day and never detected the alleged defect. Respondent argues that appellant's highway maintenance supervisor should have been able to determine the existence of the alleged defect in the lip when traveling at a normal speed of 45 miles per hour. And even if the lip was not obvious to someone traveling at normal speed, respondent contended "the duty to inspect would include a closer inspection at lower speeds, or if necessary, out of the vehicle." Thus, respondent concluded that appellant should have known or had constructive knowledge of the alleged roadway defect.

Despite these assertions, appellant is entitled to relief because respondent has failed to offer any evidence to suggest fault on the part of the inspector. We also note that, in arguing this case, respondent failed to assert any plan or prospect for showing the negligent conduct of the inspector. Although we are mindful that the prospect for proof of a claim in some cases might be dependent upon further discovery, respondent has suggested that it need not and has no plan to produce evidence on fault of the inspector. This is consistent with the fact that no such evidence was produced when respondent was confronted with a summary judgment motion on the merits.

The development of a plan for inspection is immune from suit. Because the remaining claims are nothing more than general and imprecise allegations of negligence, they do not withstand appellant's challenge on the basis of immunity.

## DECISION

Once appellant asserted its statutory immunity claim, respondent had the burden to articulate the claims to be scrutinized in determining the immunity issue and to make some showing of fact to suggest the basis for its claims. Because respondent failed to meet this burden, even when confronted by a motion for summary judgment on the merits, and has since indicated no plan or prospect to produce further evidence, appellant is entitled to summary judgment on its immunity claim.

**Reversed.**