## NED E. BLAZ AND ANOTHER v. MOLIN CONCRETE PRODUCTS CO. AND OTHERS.

244 N. W. 2d 277.

July 16, 1976—Nos. 46132, 46133.

*Firestone, Fink, Krawetz, Miley & Maas, William W. Fink* and *James P. Miley,* for appellants.

*Rider, Bennett, Egan, Johnson & Arundel, Richard J. Nygaard,* and *William J. George,* for respondents.

Heard before Rogosheske, MacLaughlin, and Marsden, JJ., and considered and decided by the court en banc.

DAVID E. MARSDEN, JUSTICE.*

Plaintiffs, Ned E. Blaz and Aleck Ostrow, commenced separate tort actions against corporate defendant Molin Concrete Products Co. and individual defendants William Molin and Donald J. Flood, employees of the corporate defendant. At pretrial conference, their claims for relief were narrowed to false imprisonment.[1] At the close of the testimony Blaz moved for a

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] Plaintiffs' counsel argued orally before this court that this pretrial order was erroneous and that an additional tort of "extortion" was also committed. We are unaware of any civil tort so denominated, and no

directed verdict with respect to his own complaint, but this motion was denied. By special verdict, the jury found that Blaz had not been falsely imprisoned. Ostrow's complaint was thereafter dismissed for failure to establish a prima facie case. Judgment was entered for defendants in both actions, and these appeals followed. We affirm.

The complaints arose out of a transaction in which Blaz and Ostrow sold steel strand to Molin Concrete Products Co., a manufacturer of reinforced concrete slabs. Upon his belief that the steel strand was defective and to discuss obtaining a refund, William Molin made a pretext of ordering additional strand and requested Blaz to come to his office. On March 23, 1972, Blaz and Ostrow drove to Molin's office. They were directed to meet Molin in another office at the rear of the plant. While Ostrow waited in the car, Blaz went to this rear office. Molin and Flood, along with Herb Molin and Jack Hamilton, were present. From this point, the testimony is conflicting.

Blaz testified that William Molin shut the door behind him to block his exit; that the other men gathered around him in an intimidating manner, terrorizing him; and that William Molin yelled at him, "I want my money or you are going to stay here until hell freezes over." Ostrow was summoned from the parking lot, and he testified that when he entered the room Blaz was "pale as a ghost." Ostrow further testified that William Molin directed him to go to his bank and procure a certified check and said that Blaz would be kept at the office until the check was received. Ostrow's car had been blockaded in the parking lot under William Molin's instructions, but this blockade was removed in order to allow Ostrow to get the check. Herb Molin followed Ostrow in another vehicle to pick up the check. Blaz testified that he was not released until Herb Molin notified William Molin by telephone that the check had been received.

---

authorities were cited in support of this claim. In any event, such claim, having been neither litigated at trial nor briefed on appeal, cannot be considered. Park Plaza State Bank v. CWS Dev. Co. 303 Minn. 306, 227 N. W. 2d 560 (1975).

William Molin denied that Blaz was a hostage or that he had been threatened. He testified that Blaz agreed to remain. Subsequent events lend credence to this version. Immediately after William Molin was notified that the check had been picked up from Ostrow, he and Blaz engaged in apparently amicable negotiations for the purpose of having the allegedly defective strand tested; they drove together to a testing laboratory for that purpose and, at Blaz' suggestion and expense, had lunch and drinks at a St. Paul restaurant.

Several days later, Blaz visited William Molin at his plant to resume negotiations for the resale of the strand. Ultimately the parties agreed on terms and Molin purchased the strand at a reduced price.

■ As here applicable, the elements of false imprisonment are (1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined. Restatement, Torts 2d, § 35; Prosser, Torts (4 ed.) § 11; 8A Dunnell, Dig. (3 ed.) § 3728.

With respect to Blaz' complaint that he was falsely imprisoned in William Molin's office, the evidence is conflicting as to each of these elements. The issue was properly submitted to the jury and the evidence is sufficient to sustain the verdict. On review we must consider the evidence in the light most favorable to the prevailing party.

■ Ostrow's complaint presents a more novel issue. Ostrow has conceded that he was never personally threatened and that he was not physically restrained or coerced in William Molin's office, in the parking lot, or by Herb Molin after leaving the plant to obtain the check. His theory of recovery is that he was compelled to go to the bank and procure a certified check against his will, and that he submitted because his partner, Blaz, would be harmed if he did not.

The element of confinement is satisfied if the plaintiff is compelled to go where he does not wish to go. Durgin v. Cohen, 168 Minn. 77, 79, 209 N. W. 532, 533 (1926). Further, the plaintiff

may be so compelled by threat of harm to a member of his family. Restatement, Torts 2d, § 40A, Comment *a*, Illustration 1; Prosser, Torts (4 ed.) § 18, p. 106. Plaintiffs have cited no authority extending the law to recognize compulsion where the threat is to an unrelated person.

We do not decide in this case whether the law should be so extended. Even if Ostrow's theory of recovery were recognized in the law, it would be necessary for him to prove that Blaz was in fact confined as a hostage for the purpose of coercing Ostrow to go to the bank. Yet plaintiffs have had an opportunity to persuade the jury that Blaz was confined, and they did not succeed. Thus, the trial court's dismissal of Ostrow's complaint was at most harmless error.

Affirmed.