Janine Anne BAKER, Respondent,

v.

William CHAPLIN, individually and in his official capacity as a Minneapolis Police Officer, Petitioner, Appellant,

City of Minneapolis, Defendant.

No. C7–92–1622.

Supreme Court of Minnesota.

June 30, 1994.

Jerry W. Snider, Charles F. Webber, Faegre & Benson, Minneapolis, for appellant.

Roderick J. Macpherson, III, Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

The respondent in this case, Janine Baker, brought a claim under 42 U.S.C. § 1983 for excessive use of force and claims under state law for assault and battery against William Chaplin, a Minneapolis police officer, for using excessive force when he hit her with a riot baton. The incident occurred while Chaplin was engaged in crowd control during a visit to Minneapolis by President Bush on September 27, 1990. The trial court denied summary judgment for Chaplin on both Baker's state law claims and her federal § 1983 claim. The court of appeals affirmed. 497 N.W.2d 314. Appellant Chaplin seeks review of the order denying him summary judgment on Baker's federal law claim and asserts that he is entitled to qualified immunity from Baker's § 1983 claim. Based on our conclusions that the law regarding excessive use of force was clearly established at the time Chaplin acted, and that disputes exist regarding genuine issues of material fact necessary to determine whether Chaplin's actions were reasonable, we affirm.

Some of the facts underlying this lawsuit are uncontested. Both parties agree that Baker participated in a demonstration which took place during President Bush's visit to Minneapolis on September 27, 1990. Baker and other protestors stood behind wooden police barriers which formed a corner at the intersection of LaSalle Avenue and Grant Street. Baker stood in the front row directly behind the Grant Street barricade; other protestors stood behind her and a barricade stood to her left along LaSalle Avenue. At some point, the barricade in front of Baker fell over. Police officers directed the demonstrators to move back and re-erected the fallen barricade. The LaSalle Avenue barricade alongside the protestors and next to Baker then fell over. Chaplin immediately moved forward through a line of police officers and struck Baker by thrusting the end of his riot baton into her chest. Chaplin did not make any move to arrest or restrain Baker. Baker was later diagnosed with a

sternal contusion and damage to cartilage and other soft tissue in her chest.

There are several key areas of disagreement between the parties regarding this incident. At the time of the summary judgment motion, evidence was presented by Baker and Chaplin in the form of affidavits and documentary material to support their positions on the contested issues. First, the parties dispute Baker's actions prior to being struck by Chaplin. Baker asserts that she did not move forward, cross the police barricades, or attempt to interfere with police officers. She states in her affidavit that she merely placed her hand on the barricade to steady herself and that shortly thereafter it fell over. Baker submitted a videotape of the incident [1] and an affidavit from another protestor to support her statement. Chaplin states in his affidavit that the crowd was surging forward and that Baker knocked or pushed over the barricade and crossed into the security area.

Another area of disagreement concerns the location of Baker's injury. Baker asserts that Chaplin struck her in the sternum. She submitted a medical report stating that her injuries typically represent "an actual bruise to the sternum itself" and that the injuries could very well have been caused by being struck in the sternal area with a riot baton at the place, date, and time of her injury. Chaplin states in his affidavit that he struck Baker in "the middle of the chest" and asserts that he struck her in the solar plexus. Chaplin has produced no evidence supporting his assertion, but claims that confirmation of his assertion can be adduced by viewing the videotape.

The parties also dispute the nature of Chaplin's use of force. Baker claims that Chaplin used a full thrust of his baton; Chaplin claims he used a "short thrust," a crowd control technique which he was trained to use. Baker submitted affidavits from two experts in the field of police tactics and training. Both experts found that the blow was not a "short thrust," but described it as a "full thrust assault" or "deadly force." [2] Baker's experts stated that the force used was excessive, unjustified and unreasonable.

Baker also submitted a police department manual and other materials showing some of the training police officers receive regarding the appropriate use of force. The police department manual includes Minn.Stat. § 609.066, which defines deadly force and codifies the justifications for its use. One of the statutory justifications, as paraphrased in the manual, is "to protect themselves or others from apparent death or great bodily harm." The training materials also instruct on proper use of the baton. The police department manual states in part:

Officers are expected to be aware of the fact that a blow to certain parts of the human body can cause immediate death, or grievous injury that can lead to a permanent physical or mental incapacity or eventual death. Areas susceptible to death or possible severe injury are the head, neck, throat, *chest (in vicinity of heart)* and arm pit. *Unless deadly force is justified, officers should avoid striking any of the above described areas.*

Striking a suspect in the following areas is likely to cause temporary physical incapacity, but not death:

* * * *Solar plexus* * * *.

(emphasis added). Police training documents on crowd control and civil disturbance also list the "heart area" as a possible fatal point of impact.

Chaplin submitted affidavits from four police officers from his department stating that

---

1. The videotape submitted by Baker was filmed by a local news crew and is part of the trial court record.

2. One of the experts explained in his affidavit that the police riot baton has traditionally been used as a barrier to assist in maintaining crowd control at demonstrations. He stated that thrust and jab procedures are taught to police officers as acceptable techniques for crowd control, but only for the purpose of repelling an imminent attack by an aggressive subject. Another expert stated that the short thrust is used to move people back in a crowd control situation and involves much less force than a full thrust, which is appropriate only in a situation where rioters are moving at great speed in an aggressive manner and there is an imminent risk of death or serious bodily harm.

Chaplin used the short thrust technique on Baker, a technique they were trained to use to control crowds and maintain the security perimeter. Each officer stated that, based upon his viewing of the videotape, in his opinion Chaplin's use of force was appropriate under the circumstances and consistent with their training.

■ In an appeal from an order denying summary judgment, we must determine if there are genuine issues of material fact in dispute and whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). There are two legal questions which a court must answer when a government official pleads qualified immunity as an affirmative defense. According to the objective test set out by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), officials are protected by qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." First we must determine whether the plaintiff has alleged the violation of a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991).[3] If the right allegedly violated was clearly established at the time of the official's actions, then we must determine whether "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information [the officer] possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

■ The Supreme Court has provided guidance regarding the degree to which the law must be "clearly established." Mere statements of constitutional principles are too vague to offer guidance to police officers in the field; the plaintiff must show that the contours of the right were sufficiently clear that a reasonable official would understand that his actions violated that right. *Anderson v. Creighton,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39. The very action in question need not have previously been held unlawful, but its unlawfulness must have been "apparent" in light of pre-existing law. *Id.*

■ In this case, Baker asserts that the law governing police use of force was clearly established at the time Chaplin struck her. She alleges that Chaplin used deadly force when he struck her. The Supreme Court set out the applicable general standard when it held that a police officer using unreasonable force violates the Fourth Amendment's protection against unreasonable search and seizure. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).[4] According to *Graham,* determining whether force used was objectively reasonable under the Fourth Amendment

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396, 109 S.Ct. at 1872.[5]

Many courts have found the law prohibiting excessive force to be clearly established

---

**3.** Discovery ordinarily should not be allowed until this threshold immunity question is resolved. *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1792–93 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). In this case, the defendant moved for summary judgment after some discovery had taken place.

**4.** Prior to *Graham,* courts had consistently found excessive use of force by police officers unconstitutional under the Fourteenth Amendment, rather than the Fourth Amendment. *See, e.g., Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir. 1985); *Bauer v. Norris,* 713 F.2d 408, 411–12 (8th Cir.1983); *Johnson v. Glick,* 481 F.2d 1028,

1033 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

**5.** The Supreme Court has declined to reach the issue of whether qualified immunity is available as a defense to excessive force claims. Although the Court has applied the qualified immunity analysis to other Fourth Amendment claims, it expressly left open the question of whether qualified immunity applies to excessive force cases. *Graham,* 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12. The plaintiff in this case has not argued that qualified immunity does not apply to this case at all; thus we are not faced with this issue.

for qualified immunity purposes. *See, e.g., Street v. Parham,* 929 F.2d 537, 540 (10th Cir.1991) (holding that "[n]o officer could reasonably believe that the use of unreasonable force did not violate clearly established law"); *Dixon v. Richer,* 922 F.2d 1456, 1461 (10th Cir.1991) (holding that the Supreme Court's Fourth Amendment standard of "objective reasonableness" for searches and seizures was set forth "long before" *Graham v. Connor* ); *Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989) ("The right of an individual not to be subjected to excessive force has long been clearly established."); *Williams–El v. Johnson,* 872 F.2d 224 (8th Cir.1989), *cert. denied,* 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989) (holding that a jailer is not entitled to qualified immunity from a § 1983 action because it is "clearly established" that it is unconstitutional for a correctional officer to beat a prisoner unnecessarily).

The specific standard for the use of *deadly* force was set forth in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Deadly force may not be used unless it is necessary to prevent escape of a suspect whom the officer has probable cause to believe poses a significant threat of death or serious physical injury to the officer or others. *Id.* This standard is also codified in a Minnesota statute governing the use of deadly force. The statute provides that:

> [T]he use of deadly force by a peace officer in the line of duty is justified only when necessary:
> (1) To protect the peace officer or another from apparent death or great bodily harm;
> (2) To effect the arrest or capture, or prevent the escape, of a person whom the peace officer knows or has reasonable grounds to believe has committed or attempted to commit a felony involving the use or threatened use of deadly force; or
> (3) To effect the arrest or capture, or prevent the escape, of a person whom the officer knows or has reasonable grounds to believe has committed or attempted to commit a felony if the officer reasonably believes that the person will cause death or great bodily harm if the person's apprehension is delayed.

Minn.Stat. 609.066 (1992). The contours of the standard are further delineated in the Minneapolis Police Department's training materials. The police department manual instructing officers on the use of the riot baton states that the chest area in the vicinity of the heart should be avoided unless deadly force is justified.

However, Chaplin argues that language from a recent Supreme Court case, *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), created a new standard for police use of force when the official is charged with protecting the life of the President. In *Hunter* the Court stated that the principle of accommodating reasonable error by public officials, so that they do not err on the side of caution for fear of being sued, is "nowhere more important than when the specter of Presidential assassination is raised." *Id.* at ——, 112 S.Ct. at 537. Relying on this language alone, Chaplin asserts that Baker must point to an excessive force case dealing with "Presidential protection" to show that the law applicable to this incident was clearly established. *Hunter,* however, concerned a warrantless search, not a use of excessive force. The Supreme Court simply reasoned that the policies underlying the immunity doctrine were especially important when Secret Service agents investigated the author of a letter warning of an assassination plot against the President. Nothing in *Hunter* supports the conclusion that the Supreme Court created a new standard regarding the use of force by police officers when the security of the President is somehow involved.

Chaplin cites no cases holding that the law regarding either excessive force in general or the specific use of force alleged here, deadly force, was not clearly established at the time that he struck Baker. The use of excessive force was clearly prohibited by a general constitutional standard; the contours of the standard for the use of force alleged in this case were further established by statute, and these standards were incorporated in the training materials used by the Minneapolis police department. These sources taken together provide an unusually strong basis for finding that Baker has met her burden; we

therefore hold that the law governing Chaplin's actions was clearly established at the time that he acted.

■ We turn next to the inquiry into whether a reasonable officer could have believed Chaplin's actions to be lawful in light of clearly established law and the information Chaplin possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039.[6] For qualified immunity to apply to the officer's actions, the evidence must show that the actions were ones that "a reasonable officer could have believed lawful." *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. The standard provides "ample protection to all but the plainly incompetent or those who knowingly violate the law"[7] and "gives ample room for mistaken judgments." *Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096, 1097, 89 L.Ed.2d 271 (1986).

■ In this case, Baker alleges that the police officer unreasonably used excessive force against her. In assessing the reasonableness of a use of force, *Graham* held that reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396, 109 S.Ct. at 1872. Both *Graham* and *Hunter* call for courts to judge reasonableness with regard to all the facts and surrounding circumstances. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872–73; *Hunter,* —— U.S. at ——, 112 S.Ct. at 537. The facts and circumstances in this case must be measured *objectively* by asking whether an objectively reasonable police officer would have believed that the force Chaplin used was lawful in light of the clearly established law and the information Chaplin possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40. An objectively reasonable police officer is one who is reasonably well trained. *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098.

Although qualified immunity is "in part an entitlement not to be forced to litigate," when the law is clearly established, immunity from trial is appropriate only when the plaintiff has not demonstrated any genuine issues of material fact which must be resolved to determine whether the defendant's actions were reasonable under clearly established law.[8] The facts and circumstances most rele-

---

**6.** The Court initially stated in *Harlow* that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [his or her] conduct." 457 U.S. at 818–19, 102 S.Ct. at 2738. In *Anderson,* however, the Court extended the reach of qualified immunity by holding that even if the law was clearly established at the time the officer acted, the officer should be permitted to argue on summary judgment that the officer reasonably believed his or her actions to be lawful. In *Anderson,* for example, the Court held that an officer conducting a warrantless search might have reasonably, but mistakenly, believed that the search was lawful. 483 U.S. at 641, 107 S.Ct. at 3039–40. If the officer's belief was reasonable, then he or she is entitled to qualified immunity. *Id.*

**7.** The "knowingly violate" language should not be construed as injecting subjective intent, good will, or malice issues into the analysis. The Supreme Court has repeatedly stated that the analysis is an objective one. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3840 (defendant's "subjective beliefs about the [action] are irrelevant.").

**8.** We recognize that the Supreme Court has "repeatedly stressed" the importance of resolving immunity questions at the earliest possible stage in litigation, ordinarily long before trial. *Hunter*

*v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the court stated:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. *All it need determine is a question of law:* whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions * * *.

*Id.* at 528, 105 S.Ct. at 2816 (emphasis added). The trial court followed this directive and determined that the legal norms allegedly violated by Chaplin were clearly established. Further, we note that the motion for summary judgment in this case was made after significant discovery had been conducted; thus, there was no need for the trial court to focus on the parties' bare allegations. By filing his motion after discovery, Chaplin waived any right to have his claim of immunity decided prior to discovery. *See Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6 (discovery may be necessary before motion for summary judgment on qualified immunity grounds can be resolved).

We do not by our opinion in this case mean to imply that trial courts may not make legal determinations on qualified immunity by considering

vant to determining the reasonableness of Chaplin's actions include Baker's behavior at the time she was struck, the amount of force Chaplin used, the location of Baker's injury, and the nature of the surrounding circumstances. In this case, these are the facts and circumstances which remain in dispute, and the legal question of the reasonableness of the officer's actions turns on the determination of such predicate facts. *See Anderson,* 483 U.S. at 655 n. 10, 107 S.Ct. at 3047 n. 10 (Stevens, J. dissenting). This court cannot decide as a matter of law whether the officer's actions in this case were reasonable without a finding of fact as to what those actions and the surrounding facts and circumstances were. In *Gainor v. Rogers,* 973 F.2d 1379, 1385 (8th Cir.1992), for example, the court of appeals held that if there are genuine issues of disputed fact surrounding the plaintiff's conduct and "the evidence [is] sufficient to create a genuine issue as to whether the defendant in fact committed the acts [citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ] * * * the defense of qualified immunity shielding the defendant from trial must be denied."

In the case at hand, Baker alleges that she was moving backward within police boundaries and complying with police orders when Chaplin lunged through a line of police officers to strike her in the sternum with a riot baton. Baker has produced an expert medical opinion, an affidavit from a witness who attended the demonstration, affidavits from two experts on the use of force by police officers, and Minneapolis police department training materials. Chaplin presented four affidavits from fellow police officers asserting that his use of force was reasonable.[9] Chaplin has produced no other evidence that he had an objectively reasonable purpose for using deadly force, or any other amount of force, on Baker. He has not asserted that he was effecting an arrest or had probable cause to suspect that Baker posed an imminent danger to himself or others. The videotape shows that Chaplin struck Baker while front-line officers stood by. A jury could conclude based on clearly established law, police department training materials, expert testimony and testimony regarding Baker's and Chaplin's actions that no objectively reasonable police officer would find Chaplin's use of force lawful. Baker has established the existence of genuine issues as to the underlying facts necessary to determine the reasonableness of the officer's actions as a matter of law. We therefore cannot conclude as a matter of law that Chaplin's actions were reasonable. Because applying the law in this case requires the establishment of predicate facts, we remand to the district court for trial.[10]

WAHL, Justice, took no part in the consideration or decision of this case.

only the allegations in the complaint and answer. As the Supreme Court stated in *Mitchell:*
> The denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity * * * may represent the trial court's conclusion that even if the facts are as asserted by the *defendant,* the defendant's actions violated clearly established law and are therefore not within the scope of the qualified immunity. In such a case, there will be nothing in the subsequent course of the proceedings in the district court that can alter the court's conclusion that the defendant is not immune. Alternatively, the trial judge may rule only that if the facts are as asserted by the *plaintiff,* the defendant is *not* immune. At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability. Even so, the court's denial of summary judgment finally and conclusively determines the defendant's right not to *stand trial* on the plaintiff's allegations * * *. 472 U.S. at 527, 105 S.Ct. at 2816 (emphasis added).

9. Chaplin argues that if any single police officer would believe Chaplin's use of force was lawful, then he is entitled to summary judgment on qualified immunity. We cannot agree. If an immunity claim could be substantiated by submission of one affidavit from a fellow police officer claiming that the force used was reasonable, the result would be near absolute immunity.

10. Upon determination of the underlying factual issues by the finder of fact, the trial court may

make another *legal* determination regarding the issue of the reasonableness of Chaplin's actions, and may find that Chaplin does enjoy qualified immunity from liability. Our holding is limited to our conclusion that Baker has submitted suffi-cient evidence to demonstrate genuine issues of material fact in dispute and evidence to support factual findings that would place the conduct at issue outside the protection of qualified immuni-ty.