Melissa **GLEASON**, Respondent,

v.

The **METROPOLITAN COUNCIL TRANSIT OPERATIONS**, et al., Appellants.

No. C2–96–2475.

Court of Appeals of Minnesota.

May 20, 1997.

Review Granted Aug. 5, 1997.

Robert M. Smith, Roger C. Alderson, Minneapolis, for Respondent.

Timothy R. Thornton, Eric J. Rucker, Briggs and Morgan, Minneapolis, for Appellants.

Considered and decided by LANSING, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

·LANSING, Presiding Judge.

In a case involving alleged disability discrimination, the Metropolitan Council Transit Operations appeals the denial of its motion for summary judgment based on official and statutory immunity. We affirm the denial of official immunity and affirm in part and reverse in part the denial of statutory immunity.

## FACTS

Melissa Gleason is disabled and confined to a wheel chair. She uses a three-wheeled, motorized wheelchair instead of the conventional four-wheeled wheelchair with two large wheels in the rear and two small wheels in the front. Before the incidents alleged in her complaint, she was a routine passenger on Metropolitan Council Transit Operations (MCTO) buses.

On December 2, 1995, Gleason boarded a wheelchair-accessible MCTO bus driven by Merrill Denenny. Gleason's complaint alleges that she recognized Denenny as a driver who had neglected to assist her in the past and who had publicly belittled her for using a "tricycle" as a wheelchair.

After Gleason boarded the bus using the lift, she backed her wheelchair into the designated space. According to Gleason, Denenny made no attempt to secure her wheelchair with safety belts as required by MCTO policy. Rather, he stood up and told the other bus passengers that there was a problem, that, because of Gleason, there would be a significant delay, and that they should disembark and board a separate bus. The other passengers all exited leaving Gleason alone on the bus with Denenny. Denenny then allegedly radioed for a supervisor stating that he had a "young one on a tricycle" whom he refused to transport. When Gleason asked Denenny to be removed from the bus, he first ignored her and then told her she would have to wait for a supervisor.

Some time later Sandra Hoeft, a MCTO supervisor, arrived. Gleason alleges that Hoeft ignored her attempts to explain what had happened. Gleason began to experience a physical tremor, a response to stress associated with her disability. Hoeft escorted Gleason off the bus and onto the next bus. The other passengers also boarded this second bus. The driver of the second bus secured Gleason's chair with the appropriate restraints and fastened the lap belt at Gleason's request.

Gleason filed suit against the MCTO, Denenny, and Hoeft. Her complaint alleges: (1) disability discrimination and aiding and abetting disability discrimination in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363.01, 363.03, by all three respondents; (2) false imprisonment by Denenny; (3) intentional infliction of emotional distress by all respondents; (4) negligent supervision, retention, training and hiring by the MCTO; and (5) respondeat superior as applied to the MCTO for the statutory violations and negligent acts of Denenny and Hoeft.

The MCTO, Denenny and Hoeft moved for dismissal arguing that the district court lacked jurisdiction because Gleason's complaint challenged a policy of the MCTO and such policies could only be reviewed by writ of certiorari. Alternatively, they moved for summary judgment on the basis of statutory and official immunity. The district court denied the motions, and this appeal followed.

## ISSUES

I. Are Gleason's claims barred by official immunity?

II. Are Gleason's claims barred by statutory immunity?

III. Did the district court lack jurisdiction because review of Gleason's claims may only be obtained by writ of certiorari?

## ANALYSIS

Whether an immunity defense applies is a question of law subject to independent review. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996). An order denying an immunity defense is appealable as of right because immunity from suit is effectively lost if a case is erroneously permitted to go to trial. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986). The burden is on the party asserting an immunity defense to demonstrate that it is entitled to immunity. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997).

### I. Official immunity

Official immunity is a common law doctrine intended "to protect public officials 'from the fear of personal liability that might deter independent action.'" *Janklow v. Minnesota Bd. of Exam'rs*, 552 N.W.2d 711, 715 (Minn.1996) (quoting *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn.1988)). When a public official is charged by law to

perform duties that require the exercise of discretion or judgment he or she may be immune from personal liability for injuries resulting from performance of those duties. *See Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976). Official immunity protects all decisions made by a public official when those decisions call for the exercise of discretion. *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 414 (Minn.1996). Stated differently, official immunity covers all but the "ministerial duties" of a public official, that is, duties that are "absolute, certain and imperative." *Id.*

 But there are limits to the operation of official immunity. When an official willfully exercises his or her discretion in a manner that violates a known right, the protection of official immunity evaporates. *See Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). This limitation, often referred to as the "malice" exception, is defined by an "objective inquiry into the legal reasonableness of an official's actions." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994).

 The starting point for analysis of an immunity question is the identification of "the precise governmental conduct at issue." *Watson*, 553 N.W.2d at 415. Gleason's complaint and her memorandum in opposition to the MCTO's motion for summary judgment allege three specific offending acts: (1) Denenny's harassing/belittling comments made in an attempt to embarrass Gleason and discourage her from using the MCTO; (2) Denenny's failure to secure the wheelchair; and (3) Denenny's refusal to let Gleason off the bus.[1]

 We stress the importance of identifying the precise alleged conduct giving rise to the plaintiff's claims at the outset of an immunities analysis. What governmental *conduct* the plaintiff is challenging is determinative of whether an immunity applies. The dissent, for example, characterizes the challenged conduct as allegations that "the driver failed to secure [Gleason's] wheelchair, refused to transport passengers until a proper tie-down had been accomplished, and called his supervisor for assistance." But those are not the allegations upon which Gleason's discrimination claims are based. Rather, her complaint alleges that Denenny "loudly pronounced that Ms. Gleason should not ride MCTO buses on her three-wheeled wheelchair," and "stated that he had a 'young one on a tricycle' whom he refused to take anywhere." The complaint further alleges that Denenny's intent was "to discourage Ms. Gleason from using MCTO public transportation." In addition, Gleason alleged that Denenny "made *no* attempts to secure [her] wheelchair." (Emphasis in original.) It is undisputed that Gleason's wheelchair had been successfully secured on previous MCTO bus rides and that it was successfully secured on the evening of the alleged occurrence by a different MCTO driver.

 Official immunity analysis applies a two-step inquiry to the identified conduct: first, we determine whether the conduct required the exercise of judgment and discretion and is therefore the type of conduct protected by official immunity; and second, we determine whether the alleged acts, even though discretionary, were stripped of the immunity's protection because the official acted without legal reasonableness in violating a known right. *See Davis v. Hennepin*

---

1. Gleason also alleges that Sandra Hoeft, the MCTO supervisor who responded to Denenny's request for assistance, "ignored [her]" and "discussed [her] disability and [her] wheelchair in a very demeaning way as though [she were] not even there." We do not believe that these allegations are sufficient to support the claims Gleason pleaded against Hoeft—disability discrimination (Minn.Stat. § 363.01), aiding and abetting discrimination (Minn.Stat. § 363.03), and intentional infliction of emotional distress. And we therefore need not consider the applicability of an immunity defense to these specific acts.

We note that the application of an immunity defense is secondary to the question of whether a plaintiff has sufficiently stated her claim. Although the immunity inquiry implies a valid claim and we therefore can consider the validity of the claim within the context of an immunity question, the elimination of such claims is better dealt with in a separate motion. *See* Minn. R. Civ. Pr. 12.03 (allowing for judgment on the pleadings). Motion practice that reflects the narrow operation of immunity—a defense to valid claims based on the nature of the acts underlying those claims—will enable clearer, fairer and more efficient resolution of these questions.

*County*, 559 N.W.2d 117, 122 (Minn.App. 1997) (applying two-step process), review denied (Minn. May 20, 1997).

The supreme court has defined a ministerial duty as " 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.' " *Johnson*, 553 N.W.2d at 46 (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). A discretionary act, unlike a ministerial act, is one in which an official must exercise " 'judgment or discretion.' " *Id.* (quoting *Elwood*, 423 N.W.2d at 677).

Gleason first alleges that Denenny made harassing and belittling comments about her in an effort to embarrass her and discourage her from riding the bus. The option of harassing and belittling a person with a disability is never left to the discretion of a public official. Indeed, the MCTO drivers' Pocket Guide instructs bus operators "to be courteous to all customers," and notes that "[g]reater awareness of and sensitivity to the needs of lift-assisted riders using accessible buses will be required." The official immunity doctrine extends to an official's conduct in performing duties that require the exercise of discretion. Any decision to harass and belittle an MCTO patron could not be made in pursuit of such a duty, and therefore official immunity is not available as a defense to claims arising from that conduct.

The second act Gleason complains of is Denenny's failure to secure her wheelchair. MCTO drivers are provided with a diagram and instructions for securing a traditional, four-wheeled wheelchair, but are provided no instructions for securing a three-wheeled wheelchair. The MCTO Pocket Guide instructs drivers that the "guidelines for boarding lift customers may not always be applicable. Good judgment is the most important rule."

Because the MCTO does not have a specific policy on securing passengers who use three-wheeled wheelchairs, Denenny needed to exercise judgment and discretion in deciding how or whether to assist Gleason. Had Gleason used a traditional, four-wheeled wheelchair, assisting in securing the chair

would likely have been a ministerial duty. *See Cook*, 200 Minn. at 224, 274 N.W. at 167 (describing ministerial duties as "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts"). But because the MCTO policy offered no guidance to Denenny, his decision on how to handle Gleason's wheelchair called for the exercise of judgment and discretion and is therefore the type of conduct protected by official immunity. *See, e.g., Watson*, 553 N.W.2d at 415 (driver's response to assault among passengers "called for the exercise of judgment and discretion * * * for the protection of all the passengers on the bus" when policy instructed driver to call central operations and wait for instructions).

Third, Gleason alleges that Denenny would not allow her to exit the bus. Denenny controlled the lift used to assist Gleason in and out of the bus, and she therefore could not exit without his cooperation. Again, the course of action was not "absolute, certain and imperative." Denenny was following MCTO policy by calling a supervisor and waiting for her arrival. But that policy would not control a decision to force Gleason to wait in the bus. Therefore, Denenny's alleged decision to ignore Gleason's requests to exit the bus involved the exercise of discretion.

We conclude that Denenny's allegedly harassing and belittling comments were not the type of conduct protected by the official immunity doctrine, but that his decision not to strap Gleason's wheelchair and his decision to have her wait in the bus for the supervisor's arrival were acts requiring the exercise of judgment and discretion. We now consider whether the latter two acts, although discretionary, are stripped of the immunity's protection.

As noted by counsel at oral argument, the evolution of immunities law in Minnesota has, at times, been marked more by convolution than precision. And Minnesota is not alone in struggling to develop an immunities doctrine that is both flexible enough to serve its purpose in multiple circumstances and enunciated with enough specificity to offer meaningful guidance to public employees and the

bar. *See, e.g., Weeks v. City of Newark,* 62 N.J.Super. 166, 178, 162 A.2d 314, 321 (1960) (comparing the logic of immunities doctrine to rules "governing French irregular verbs") (cited in *Janklow,* 552 N.W.2d at 715), *aff'd,* 34 N.J. 250, 168 A.2d 11 (1961).

 One of the least easily understood aspects of immunities law is the "malice" exception to official immunity.[2] But our reading of recent supreme court cases suggests a trend toward a clear and objective standard reflecting a very narrow inquiry: an official, although performing duties that require the exercise of judgment and discretion, nonetheless may not assert the defense of official immunity if the official has acted without legal reasonableness in violating a known right. *See City of Mounds View,* 518 N.W.2d at 571–72 (the exception contemplates "more of an objective inquiry into the legal reasonableness of an official's actions"); *Rico,* 472 N.W.2d at 107 ("'the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right'" abrogates official immunity) (citations omitted).

 The analysis for determining whether official immunity has been abrogated by an unjustified violation of a known right is similar, but not identical, to the analysis of qualified immunity in Section 1983 actions. In Section 1983 cases, whether an official is protected by qualified immunity "turns on the 'objective legal reasonableness' of the action * * * assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citations omitted). As with the federal standard, an official seeking to qualify for official immunity in Minnesota must show (1) that his or her conduct was "legally reasonable," *City of Mounds View,* 518 N.W.2d at 571, or (2) that "no clearly established law or regulation prohibited [the] conduct," *Rico,* 472 N.W.2d at 107.

The Minnesota official immunity doctrine and the federal qualified immunity doctrine differ with respect to the analysis of "legal reasonableness." In *Elwood,* 423 N.W.2d at 677 (Minn.1988), the Minnesota Supreme Court declined to adopt the federal governmental immunity analysis to common law official immunity as applied to state tort claims because the U.S. Supreme Court had restructured its analysis, eliminating the subjective "good faith" component of legal reasonableness. *See id.* at 674–77. The U.S. Supreme Court eliminated the subjective "good faith" component because it typically involved fact questions requiring resolution by a jury and was therefore contrary to the purpose of immunity which is to protect officials from suit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In subsequent decisions, the Minnesota Supreme Court has indicated favor for the federal standard and the federal courts' attempts to isolate purely legal questions on which to decide the applicability of immunity. *See, e.g., Carter v. Cole,* 539 N.W.2d 241 (Minn.1995) (adopting federal reasoning for separating appeals challenging evidence sufficiency, a fact-based question, from appeals of immunity denials, a legal question) (citing *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)); *Rico,* 472 N.W.2d at 108 ("federal decisions interpreting qualified immunity under section 1983, though certainly not conclusive, are instructive when we examine an official immunity issue because section 1983 qualified immunity and common law official immunity further the same purpose."). But the court has retained reference to the subjective "good faith" component of legal reasonableness in stating its test. *See City of Mounds View,* 518 N.W.2d at 571 (the standard contemplates "less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions").

 The "subjective inquiry into malice" does not refer to the question of whether the official was acting with animus. Malice in the context of immunity connotes a concept unrelated to "ill will" or "improper mo-

---

2. Part of the confusion appears to stem from the use of the term "malice." *See infra,* note 3 and accompanying text. For this reason we avoid use of the term in our analysis.

tive." *See Rico,* 472 N.W.2d at 107, n. 5 (distinguishing malice in the defamation context).[3] Rather, the "subjective component," to the extent that it is retained in Minnesota's official immunity analysis, simply allows an official to argue that, despite the lack of an "objective" legal justification for the violation, the offending acts were taken in good faith. It is likely that, under most circumstances, a legal determination on the existence of "good faith" will be precluded by the existence of disputed facts. When genuine issues of material fact exist, official immunity cannot operate to bar suit, even though it may ultimately bar liability. *See Rico,* 472 N.W.2d at 107; *Davis,* 559 N.W.2d at 123. Therefore, it is the rare case in which the "subjective component" of legal reasonableness will be relevant or a viable theory for the defendant seeking to avoid suit.

 Thus, even after an official has demonstrated that his or her conduct was discretionary, the operation of official immunity is limited to those situations in which an official shows that the allegedly offensive conduct was legally reasonable or that no "clearly established law" prohibited the conduct. Immunity for the discretionary act applies when the official demonstrates: (1) that the conduct was "objectively" legally reasonable, that is, legally justified under the circumstances; (2) that the conduct was "subjectively" reasonable, that is, taken with subjective good faith; or (3) that the right allegedly violated was not clearly established, that is, that there was no basis for knowing the conduct would violate the plaintiff's rights.

 Applying these principles to the evidence submitted in this case, the MCTO has failed to establish that Denenny acted with objective legal reasonableness, that he acted with subjective good faith, or that the law allegedly violated by his conduct was not clearly established when he refused to strap Gleason's wheelchair or let her off the bus.

First, the MCTO has offered no legal justification for Denenny's conduct. Rather, the MCTO on appeal challenges the validity of Gleason's allegations and argues that "mere allegations" cannot provide a basis for denying official immunity. The MCTO asserts, for example, that Gleason, while alleging that Denenny had insulted her in the past, is "consistently incapable of identifying the driver," suggesting that her allegation of prior incidents is untrue.

 Whether Gleason's allegations are substantiated or refuted by the evidence is a question for the trier of fact, not for an appellate court reviewing the narrow issue of immunity. *See Johnson,* 515 U.S. at ———, 115 S.Ct. at 2158–59 (affirming the separability of summary judgment based on the merits involving determinations of fact from summary judgment based on governmental immunity which involves a purely legal determination and holding that disputes over genuine issues of fact are non-appealable in the context of immunity); *Carter,* 539 N.W.2d at 241 (applying *Johnson* ). We stress that fact-based challenges to the merits of a case cannot be considered in an appeal denying an immunity defense. The paucity of evidence in the record so early in litigation does not permit a thorough review on the merits, such review is potentially duplicative, and it further complicates an immunity analysis already suffering from overbreadth and ambiguity. *See Johnson,* 515 U.S. at ——— ———, 115 S.Ct. at 2156–59 (discussing reasons for separating fact-based challenges to claim's merit from challenges to legal determination on immunity).

 Moreover, contrary to the MCTO's assertion, allegations in a complaint *may* provide the basis for denying an immunity defense. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of plaintiff's version of the facts, nor even determine

---

**3.** When a plaintiff has alleged that an official has acted with "actual malice" (i.e., ill will or improper motive) in carrying out his or her duties, that allegation may support the court's determination that the official's conduct was not legally reasonable. But an allegation of actual malice is not necessary. Rather the burden is on the party asserting the immunity to show either (1) legal reasonableness, or (2) that the law allegedly violated was not clearly established.

whether the plaintiff's allegations actually state a claim. All it need determine is a question of law * * * ."); *Baker v. Chaplin*, 517 N.W.2d 911, 916–17 n. 8 (Minn.1994) (a legal determination on immunity may be made "by considering only the allegations in the complaint and answer.") (citing *Mitchell*, 472 U.S. at 527, 105 S.Ct. at 2816), *cert. denied*, 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995). We acknowledge that earlier cases from this court have stated that the plaintiff may not rely on mere allegations of malice but must present specific facts evidencing bad faith. *See McDonough v. City of Rosemount*, 503 N.W.2d 493, 498 (Minn. App.1993), *review denied* (Minn. Sept. 10, 1993); *Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn.App.1990), *review denied* (Minn. Feb. 28, 1990). But both *McDonough* and *Reuter* predate the supreme court's enunciation in *Baker* that an immunity determination may be made based on the allegations in a complaint.

Second, the MCTO has failed to show that Denenny's conduct warrants immunity based on his subjective "good faith." The MCTO submits that Denenny did not allow Gleason off the bus because it was a "cold December evening." But there is no indication why Gleason could not determine for herself whether she would prefer to remain in the bus or wait on the sidewalk with the other disembarked passengers. In light of the dispute over good faith, concern about the cold temperature might demonstrate the factual dispute but does not by itself establish good faith.

▆▆▆ Third, the MCTO has failed to demonstrate that the laws allegedly violated by Denenny were not clearly established and that Denenny therefore had no basis for knowing his conduct would violate Gleason's rights. The laws allegedly violated are the Minnesota Human Rights Act (Minn.Stat. §§ 363.01, 363.03) and the common law prohibition against false imprisonment. The MCTO asserts that "[n]o clearly established law requires MCTO drivers to know how to tie down every type of wheelchair that might board the bus, and to refrain from becoming upset when difficulty with securing a chair is encountered." But these defenses relate to whether there was an intent to discriminate, not to whether immunity applies. Our inquiry is whether, assuming the facts as alleged by Gleason, the law is well-enough established that Denenny had reason to believe his conduct was prohibited; in other words, whether he knew or should have known that his conduct, as alleged, violated Gleason's rights. It is unlawful discrimination to "deny any person the full and equal enjoyment of the * * * services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of * * * disability." Minn.Stat. § 363.03, subd. 3(a)(1) (1996). A "transportation facility of any kind" is a place of public accommodation. Minn.Stat. § 363.01, subd. 33 (1996). This law, based in statute, is clearly established.

▆▆▆ The common law of false imprisonment reflects the general understanding that an individual may not, without legal justification, be confined against her or his will. *See Kleidon v. Glascock*, 215 Minn. 417, 425, 10 N.W.2d 394, 397 (1943) (false imprisonment is any imprisonment that is not legally justifiable). Refusal to engage the lift mechanism to allow Gleason to exit arguably confined her against her will without apparent legal justification and implicates the common law of false imprisonment, which is clearly established.

In sum, Gleason has alleged three specific, offensive acts on which she bases her claims. One of those alleged acts—harassing and belittling comments—did not involve the exercise of discretion and therefore did not qualify for official immunity. The other two alleged acts—failing to secure the wheelchair and failing to allow Gleason off the bus—did involve the exercise of discretion, but were subject to exception because the MCTO did not demonstrate that the alleged acts were legally reasonable or that the law allegedly violated is not clearly established. We therefore affirm the district court's ruling denying summary judgment on the basis of official immunity.

## II. Statutory immunity

▆▆▆ The supreme court has stated that the immunity derived from Minn.Stat. § 3.736, subd. 3 (1996) (state's discretionary

function immunity) should be referred to as "statutory immunity." *Janklow*, 552 N.W.2d at 716. The court has applied the same language to immunity derived from Minn. Stat. § 466.03, subd. 6 (1996) (municipality's discretionary function immunity). *Watson*, 553 N.W.2d at 412. Statutory immunity is absolute and applies to "a loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6.

The purpose of statutory immunity is rooted in the separation of powers—to prevent courts from second guessing " 'policy-making activities that are legislative or executive in nature.' " *Watson*, 553 N.W.2d at 412 (quoting *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 718 (Minn.1988)). For purposes of statutory immunity, the court distinguishes between "planning level" activity, which is within the immunity, and "operational level" activity, which is not. *Id.* The court has indicated that the " 'crucial question * * * is whether the conduct involves the balancing of public policy considerations in the formulation of policy.' " *Id.* at 413 (quoting *Holmquist v. State*, 425 N.W.2d 230, 234 (Minn.1988)).

A planning level decision involves " 'questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy.' " *Id.* (quoting *Holmquist*, 425 N.W.2d at 232). Statutory immunity is narrowly construed because it is the exception to the general rule of governmental liability. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982).

We held in *Davis*, 559 N.W.2d at 122, that statutory immunity is not available as a defense to Minnesota Human Rights Act claims. The MCTO argues that *Davis* should not be extended to MHRA disability discrimination claims for reasonable accommodations. We need not reach this issue, however, because Gleason's claim does not

raise accommodation issues. It is undisputed that Gleason had been accommodated on MCTO buses prior to December 2, 1995, and that on that evening she was accommodated on a separate bus not driven by Denenny.[4]

Statutory immunity also potentially applies to bar Gleason's common law tort claims: false imprisonment, intentional infliction of emotional distress, negligent supervision, hiring, training and retention.

The underlying allegations supporting Gleason's claims for false imprisonment and intentional infliction of emotional distress are Denenny's failure to allow her off the bus and his belittling treatment of her. That conduct did not involve the "balancing of public policy considerations." Rather it is "operational level" activity for which statutory immunity is not available. *See Watson*, 553 N.W.2d at 413.

The claims for negligent supervision, hiring, training and retention, in contrast, are based on policy level activity. We have previously determined that decisions involving supervision and retention of employees are discretionary acts entitled to statutory immunity. *See Oslin v. State*, 543 N.W.2d 408, 415–16 (Minn.App.1996), *review denied* (Minn. Apr. 1, 1996); *cf. Johnson v. State*, 553 N.W.2d 40, 47 (Minn.1996) (supervision of parolee is discretionary act). Likewise, the training of bus drivers involves policy considerations and is protected by statutory immunity. *Watson*, 553 N.W.2d at 413. Thus, Gleason's claims against the MCTO for negligent supervision, hiring, training, and retention are barred by statutory immunity.

### III. District court jurisdiction

Finally, the MCTO argues that the district court lacked jurisdiction because Gleason's claims challenge "administrative determinations" and must proceed by writ of certiorari. But the district court found that Gleason was not challenging MCTO policy.

---

4. Nonetheless, we note that the reasoning of *Davis*, built on the supreme court's analysis in *Janklow*, 552 N.W.2d at 717–18, is equally forceful whether applied to discrimination or accommodation. The nub of the argument is that the legislature did not intend to immunize govern-

ment entities from the mandates of the Human Rights Act. *See Janklow*, 552 N.W.2d at 717–18; *Davis*, 559 N.W.2d at 121–22. We see no basis for asserting that the legislative intent differed with respect to reasonable accommodation.

Our review of her complaint supports that determination.

Even if the complaint did challenge MCTO policy, the development of such policy is not a "quasi-judicial" activity requiring review by writ of certiorari.

> The term 'quasi judicial' indicates acts of the city officials which are presumably the product or result of investigation, consideration, and deliberate human judgment based upon evidentiary facts of some sort commanding the exercise of their discretionary power. It is the performance of an administrative act which depends upon and requires the existence or nonexistence of certain facts which must be ascertained, and the investigation and determination of such facts cause the administrative act to be termed quasi judicial.

*City of Shorewood v. Metropolitan Waste Control Comm'n*, 533 N.W.2d 402, 404 (Minn. 1995) (quoting *Oakman v. City of Eveleth*, 163 Minn. 100, 108–09, 203 N.W. 514, 517 (1925)). The development of a tie-down policy for wheelchairs on MCTO buses was not a quasi-judicial activity.

## DECISION

We affirm the denial of the MCTO's motion for summary judgment based on official immunity and statutory immunity except that portion denying statutory immunity from Gleason's negligent supervision, hiring, training and retention claims. Because those negligence claims were based on activity requiring the balancing of policy considerations, they are barred by statutory immunity and we reverse. We affirm the district court's determination that it has jurisdiction over Gleason's claims.

**Affirmed in part, reversed in part, and remanded.**

SHORT, Judge (concurring in part, dissenting in part).

I concur in the judgment insofar as it concludes Gleason's allegations are insufficient to state a claim against the supervisor and, therefore, dismisses the supervisor from the suit. I also concur with this court's decision that the driver is not immune from suit on the false imprisonment count, but I respectfully dissent from this court's decision with respect to the remainder of the bus driver's conduct, which is entitled to official and statutory immunities.

A public official loses the protection of official immunity by committing an act that violates clearly established statutory or constitutional rights. *Baker v. Chaplin*, 517 N.W.2d 911, 914 (Minn.1994), *cert. denied*, 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995); *see Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991) (concluding official could not have committed willful or malicious wrong because no clearly established law or regulation prohibited actions). This exception to official immunity contemplates more than an intentional act that is subsequently found by a jury to constitute a wrong; instead, it requires an intentional act the official has reason to believe is prohibited. *Rico*, 472 N.W.2d at 107; *see State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571–72 (Minn.1994) (inquiring whether official had reason to believe given conduct was proscribed); *Stone v. Badgerow*, 511 N.W.2d 747, 751 (Minn.App.1994) (recognizing statutory or constitutional right alleged to have been violated must be clearly established such that a "reasonable official would understand that what he is doing violates that right") (citation omitted), *review denied* (Minn. Apr. 19, 1994).

Gleason alleges the driver falsely imprisoned her by refusing to assist her in exiting the bus. Public officials are not immune from suit in actions on intentional torts because such acts willfully violate another's clearly established rights. *See LeBaron v. Minnesota Bd. of Pub. Defense*, 499 N.W.2d 39, 41 (Minn.App.1993) (noting willful nature of intentional torts and concluding they are not protected by official immunity), *review denied* (Minn. June 9, 1993); *see also Blaz v. Molin Concrete Prods. Co.*, 309 Minn. 382, 385, 244 N.W.2d 277, 279 (1976) (enumerating elements of cause of action for false imprisonment); *Durgin v. Cohen*, 168 Minn. 77, 79, 209 N.W. 532, 533 (1926) (defining false imprisonment). While the driver alleges the harsh winter weather outside prompted him to refuse to assist Gleason's exit, Gleason states the driver imprisoned her on

322

the bus out of personal animosity. Because Gleason has alleged facts sufficient to raise a genuine issue of the driver's commission of an intentional tort, the driver is not entitled to immunity from suit on the false imprisonment count in Gleason's complaint.

Gleason also alleges the driver made belittling comments, failed to secure her wheelchair, refused to transport passengers until a proper tie-down had been accomplished, and called his supervisor for assistance. It is undisputed that the Metropolitan Council Transit Operations (MCTO) regulations provided no guidance on the securing of nontraditional wheelchairs and forbade movement of the bus unless wheelchairs were secured. Therefore, the driver had no reason to believe his waiting for a supervisor to assist with the tie-down was prohibited. Although the driver's demeanor was allegedly offensive, Gleason's allegations of ill will cannot defeat immunity where the conduct at issue is an objectively reasonable, authorized act. *See City of Mounds View,* 518 N.W.2d at 571 (holding analysis of "malicious wrong" requires objective inquiry into legal reasonableness of official's actions rather than subjective inquiry into malice). Because the driver violated no clearly established law or regulation, his conduct is shielded by official immunity.

The driver is also entitled to statutory discretionary function immunity because, despite Gleason's complaints about the driver's conduct, her real disagreement is with the MCTO policies concerning the securing of wheelchairs. *See Pletan v. Gaines,* 494 N.W.2d 38, 44 (Minn.1992) (concluding plaintiff's claim against school constituted challenge to district's formulation of bus transportation policy, which is protected by immunity). We cannot second-guess the MCTO's policy decisions, made on the basis of economic and safety considerations, to provide only for the securing of traditional wheelchairs or to forbid drivers from moving buses before wheelchairs are secured. *See Watson by Hanson v. Metropolitan Transit Comm'n,* 553 N.W.2d 406, 412 (Minn.1996) (refusing to review MTC's policy-level decisions concerning security on city buses). Under these circumstances, the

trial court erred as a matter of law. I would reverse the trial court's decision and grant the driver immunity from suit on all counts except the one alleging false imprisonment.